Peter H. **KOUFOS**, Plaintiff,

v.

**U.S. BANK, N.A., as Trustee on Behalf of the Holders of the CFSB Mortgage Pass–Through Certificates Series 2005–CF1, Select Portfolio Servicing, Inc., Lender Processing Services, Lender Processing Services Default Solutions, New Century Mortgage Corp., and Ablitt & Scofield, P.C., Defendants.**

**Civil Action No. 12–cv–10743–DJC.**

United States District Court,
D. Massachusetts.

March 21, 2013.

Order Amending in Part July 1, 2013.

Glenn F. Russell, Jr., Law Office of Glenn F. Russell Jr., Fall River, MA, for Plaintiff.

Peter Francis Carr, II, Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

CASPER, District Judge.

### I. Introduction

Plaintiff Peter Koufos ("Koufos") has sued U.S. Bank National Association ("U.S. Bank"), as Trustee on behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005–CF1 ("Trust"), Select Portfolio Servicing, Inc. ("SPS"), Lender Processing Services, LPS Default Solutions, New Century Mortgage Corporation ("New Century") and Ablitt & Scofield, P.C. (collectively, "Defendants") asserting claims that primarily relate to U.S. Bank's attempted foreclosure of Koufos's residence.

Koufos's amended verified complaint asserts claims against U.S. Bank for injunctive relief ("Count I"), a declaratory judgment that U.S. Bank does not have standing to enforce the promissory note related to Koufos's mortgage ("Count II") and a declaratory judgment that U.S. Bank does not have standing to enforce Koufos's mortgage contract ("Count III").

D. 10 at 37–43. Koufos asserts claims against U.S. Bank and SPS alleging violations of Mass. Gen. L. c. 93A ("Count IV"), violation of the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. L. c. 140D ("Count VII") and intentional and negligent infliction of emotional distress ("Count VIII"). D. 10 at 43–44, 46–48. Koufos asserts claims against all Defendants for civil conspiracy ("Count V") and unjust enrichment ("Count VI"). D. 10 at 44–46.

■ U.S. Bank and SPS have moved to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(6), or to strike Koufos's amended verified complaint under Fed.R.Civ.P. 8 and 12(f) for failing "to comply with the short and plain pleading requirement." [1] Def. Mot., D. 14 at 1. For the reasons set forth below, U.S. Bank and SPS's joint motion to dismiss is GRANTED in part and DENIED in part and their motion to strike Koufos's complaint is DENIED.

### II. Background

Unless otherwise noted, the following factual allegations are from Koufos's amended verified complaint, D. 10, that the Court accepts as true for the purposes of resolving U.S. Bank and SPS's joint motion to dismiss. *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

### A. Koufos Obtains a Mortgage Loan from New Century

Koufos resides at 19 Skyline Drive in Medway, Massachusetts (the "Property").

---

1. Only Defendants U.S. Bank and SPS have appeared in this action which was removed to this Court approximately one year ago pursuant to 28 U.S.C. § 1441(a). D. 1 ¶ 2. "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). "The defect in the removal process resulting from a failure of unanimity is not considered to be a jurisdictional defect, and unless a party moves to remand based on this defect, the defect is waived and the action may proceed in federal court." *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 75–76 (1st Cir.2009).

¶ 1. On January 28, 2005, Koufos refinanced the mortgage loan on the Property with Defendant New Century. ¶ 7. Koufos executed a promissory note in the amount of $344,250 ("Koufos note") and granted New Century a mortgage in his Property ("Koufos mortgage"). ¶¶ 7, 10. The Koufos mortgage was recorded with the Norfolk Registry of Deeds on February 2, 2005. ¶ 11.

### B. *New Century Goes Bankrupt and Sells Most of Its Loan Assets*

On April 2, 2007, New Century filed for Chapter 11 bankruptcy and requested to operate as a debtor in possession ("DIP") for the approximately two thousand residential loans that it owned at that time. ¶¶ 20–23, 81. New Century, acting as a DIP, in May 2007 agreed to sell a portion of its "mortgage assets" for around $58 million to Ellington Capital Management Group L.L.C. ("Ellington"). ¶¶ 82–83. On June 29, 2007, Ellington purchased New Century's remaining residential loans except for forty-six loans that were either subject to "complications related to the State of Ohio" or required the clearing of title. ¶¶ 85–86. Koufos alleges that Koufos's mortgage and loan had been sold by New Century to some other entity prior to June 29, 2007. ¶ 87.

### C. *New Century Purports to Assign Koufos's Loan to U.S. Bank and U.S. Bank Begins Foreclosure Proceedings*

On or about April 9, 2009, Defendant SPS, in accordance with a power of attorney it held on behalf of New Century, purported to assign the Koufos mortgage and note to U.S. Bank as trustee for the Trust, and recorded the assignment with the Norfolk County Registry of Deeds.

¶¶ 13, 15, 27, 88, 98–100, D. 10 Exh. D. U.S. Bank commenced foreclosure proceedings against Koufos.[2] ¶ 45. Those proceeding were automatically stayed in December 2010 when Koufos filed for bankruptcy. ¶¶ 89, 91; D. 15 at 2. In March 2011, U.S. Bank filed a motion in bankruptcy court to lift the automatic stay. ¶ 91. Koufos opposed that motion and further challenged U.S. Bank's right to enforce the note. ¶¶ 91–92. On October 21, 2011, the bankruptcy court lifted the automatic stay and dismissed Koufos's challenge for lack of subject matter jurisdiction. ¶ 148.

### D. *Procedural History*

On April 24, 2012, Koufos filed this action in the Norfolk Superior Court challenging U.S. Bank's foreclosure sale of the Property scheduled for April 27, 2012. D. 9 at 1. U.S. Bank and SPS removed the matter to federal court on April 26, 2012. D. 1. On that same day, Koufos moved for injunctive relief to block the foreclosure sale. D. 4, 7. Koufos filed an amended verified complaint on May 2, 2012. D. 10. U.S. Bank and SPS subsequently filed a motion to dismiss or to strike Koufos's amended verified complaint. D. 14. The Court held a hearing on the motions and denied Koufos's motions for injunctive relief, D. 4, 7, and took U.S. Bank and SPS's joint motion to dismiss or strike Koufos's complaint, D. 14, under advisement. D. 23–24.

## III. Discussion

### A. *Standard of Review*

To decide a motion to dismiss, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." *Schatz . v. Republican State Leadership*

---

**2.** U.S. Bank states that Koufos has been in default of his loan since 2008 and that it began foreclosure proceedings in May 2009.

Tr. of July 16, 2012 Hearing, D. 24 at 23:8–13; D. 15 at 2.

*Comm.,* 669 F.3d 50, 55 (1st Cir.2012). Stated differently, on the plaintiff's view of the facts, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see Ocasio–Hernández,* 640 F.3d at 12. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## B. *Koufos Has Stated a Right to Declaratory Relief as to U.S. Bank's Standing to Enforce the Koufos Mortgage*

■ The Court first addresses the allegations made in Counts I, II and III. Count I is captioned "Injunctive Relief" and is styled in as a request for a preliminary and a permanent injunction. D. 10 ¶¶ 222–33. An injunction is not a cause of action, but a remedy. *See Wentworth Precious Metals, LLC v. City of Everett,* No. 11–10909–DPW, 2013 WL 441094, at *15 (D.Mass. Feb. 4, 2013); *Green v. Parts Distrib. Xpress, Inc.,* No. 10–11959–DJC, 2011 WL 5928580 (D.Mass. Nov. 29, 2011). Accordingly, the Court denies this cause of action, but injunctive relief may be available if Koufos succeeds on the merits of his remaining claims.

■ Counts II and III seek declaratory judgments that U.S. Bank lacks standing to enforce the terms of the Koufos note and mortgage, respectively. D. 10 ¶¶ 243, 257. A declaratory judgment "in a case of actual controversy ... enable[s] litigants to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 534 (1995). The First Circuit has recognized that "a Massachusetts mortgagor has a legally cognizable right under state law to ensure that any attempted foreclosure on her home is conducted lawfully." *Culhane v. Aurora Loan Servs. of Nebraska,* 708 F.3d 282, 290 (1st Cir.2013).[3] Koufos alleges that the "currently scheduled foreclosure auction" would not be "valid." D. 10 ¶¶ 223 (alleging U.S. Bank "does not have the current legal authority to act pursuant to the power of sale in [Koufos's] mortgage contract, because Defendant(s) could not legally receive a legally valid assignment of [Koufos's] mortgage contractual rights on the date(s) of the purported [a]ssignment"); D. 10 ¶ 226 (alleging that "the Legal Notice [of foreclosure] is not valid because at the time it was sent, [U.S. Bank] was not a proper assignee and holder of [Koufos's] mortgage"); D. 10 ¶ 227 (alleging "[U.S. Bank] cannot conduct a valid foreclosure auction of [Koufos's] residence under Massachusetts law"); D. 10 ¶ 244 (incorporating allegations into Count III).

---

**3.** The Court recognizes that the mortgagees in *Culhane,* 708 F.3d at 288–89, 290–91, and in *U.S. Bank Nat. Ass'n v. Ibanez,* 458 Mass. 637, 638, 647, 941 N.E.2d 40 (2011) (upon which *Culhane* relies) had completely exercised the statutory power of sale to foreclose on the mortgagor's residence. Here, in contrast, U.S. Bank has not exercised its power of sale but has announced its intention to do so and has allegedly taken steps to exercise its power. *See* Tr. of July 16, 2012 Hearing, D. 24 at 26 (where U.S. Bank stated, "we keep post-

poning [the foreclosure sale] as a courtesy to the Court and to the plaintiff"); D. 10 ¶ 45 (alleging that U.S. Bank has "published ... notice of auction sale"). As *Culhane* and *Ibanez* strongly imply, it would unnecessarily increase potential damages and waste all parties' resources to require that a bank's nonjudicial foreclosure action finish before allowing a borrower to challenge a necessary step in the foreclosure process as void and uncorrectable. *Culhane,* 708 F.3d at 290–91; *Ibanez,* 458 Mass. at 647, 941 N.E.2d 40.

The Court will not dismiss Count III, which seeks a declaratory judgment that U.S. Bank lacks standing to enforce the mortgage contract. Here, Koufos alleges that New Century had completely divested itself of the Koufos mortgage by June 29, 2007. D. 10 ¶ 87. U.S. Bank relies on a purported assignment from New Century (by SPS through power of attorney) to U.S. Bank (as trustee for the Trust) that took place in April 2009 to establish that U.S. Bank had the right to foreclose under the power of sale contained within Koufos's mortgage contract. D. 15 at 2; Tr. of July 16, 2012 Hearing, D. 24 at 15:5–6, 18:5–8, 19:19–22, 20:14–16.[4] If Koufos is correct, New Century purported in 2009 to assign to U.S. Bank something that New Century no longer owned and could not assign. In that case, the purported assignment was invalid; any foreclosure proceeding grounded on rights obtained under the invalid assignment would be void. *See U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647–48, 941 N.E.2d 40 (2011) (noting that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these statutes is void" and that a mortgagee has "authority to exercise the power of sale contained in [a] mortgage[ ] only if [the mortgagee was] the assignee[ ] of the mortgage[ ] at the time of the notice of sale").

█ U.S. Bank and SPS's primary grounds in moving to dismiss this claim is that Koufos "is barred from attacking or claiming deficiencies in the recorded assignment of [the] mortgage to U.S. Bank" where Koufos does not have standing to assert a challenge. D. 15 at 3. The First Circuit rejected this argument in *Culhane*, 708 F.3d at 290–91. "A mortgagor has

standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee). If successful, a challenge of this sort would be sufficient to refute an assignee's status qua mortgagee." *Id.*

Even had *Culhane* not squarely foreclosed this argument, other courts had previously recognized that a mortgagor's argument that the purported assignor of a mortgage "did not own the [m]ortgage at the time it purported to assign it is not a 'claim[ ]' that the assignment ... is defective,' but rather a claim that, as a stranger to the [m]ortgage, [the purported assignor] could not have passed any ownership rights in the [m]ortgage to [the purported current holder]." *In re Bailey*, 468 B.R. 464, 473–76 (Bankr.D.Mass.2012); *Kirtz v. Wells Fargo Bank*, No. 12–10690–DJC, 2012 WL 5989705, at *9 & n. 2 (D.Mass. Nov. 29, 2012); *Butler v. Deutsche Bank Trust Co. Americas*, No. 12–10337–DPW, 2012 WL 3518560, at *6 (D.Mass. Aug. 14, 2012); *In re Lopez*, 486 B.R. 221, 228–29 (Bankr.D.Mass.2013). Where a purported assignment is alleged to be *void ab initio*, decisions pre-dating *Culhane* hold that a plaintiff has standing to pursue his or her claim. *See, e.g., In re Bailey*, 468 B.R. at 475, *In re Lopez*, 486 B.R. at 228–29. Koufos has standing to pursue his claim that because New Century no longer owned the Koufos mortgage in 2009 that it could not assign that instrument.

█ Koufos makes two additional allegations that require further discussion. First, Koufos alleges that "Defendant(s) could not legally receive a legally valid

---

4. There are allegations in the record that the Defendants had previously sought to rely on an alleged July 2005 "conveyance" or "assignment" of the mortgage and note. D. 10 ¶¶ 132, 136, 138 n. 45, 139, 161 n. 55, 170– 73, 177, 179, 254. Even were that so, U.S. Bank and SPS now affirmatively state that for the purposes of this motion they do not rely on any assignment made before April 2009.

assignment of [Koufos's] mortgage contractual rights derived from the originating entity and all intermediary parties, to it." D. 10 ¶¶ 224, 244 (incorporating ¶ 224 into Count III). Koufos appears to allege that his grant of the power of sale to New Century was somehow exclusive and could not be transferred to subsequent parties. *See* D. 10 ¶ 10 (alleging that Koufos "specifically granted the contractual right to enforce the power of sale in the Koufos mortgage, specifically to only New Century Mortgage Corporation"). To the extent that Koufos is alleging that New Century (or SPS acting on its behalf) "had no authority to make an assignment to a particular assignee," *Culhane*, 708 F.3d at 291, Koufos has standing to mount this challenge. The Court makes no ruling on the merits of this claim.

■ Second, U.S. Bank is being sued as trustee of a securitized mortgage trust, the CFSB Mortgage Pass–Through Certificates Series 2005–CF1. Koufos challenges whether the transfer of the Koufos mortgage and note into the Trust complied with the "trust terms stated within [the Trust's] Governing Documents." D. 10 ¶¶ 225, 247–49. *See also* D. 10 ¶¶ 18–19 (alleging that "for the Trust to have ... a legally cognizable right to enforce the contractual power of sale in the Koufos mortgage under [Mass. Gen. L. c. 244 § 14], as a 'holder' ... it must follow its Governing Documents, which control" and that the Trust is "required to strictly follow the mandates of its Governing Documents ... with regards to the conveyance [of] the Koufos note and mortgage ... to the Trust"); D. 10 ¶ 141 (alleging that a "Trust ... is required to follow its Governing Documents ... with regards to the assignment of the corpus to it, in order for the Koufos mortgage to be part of the Defendant Trust's corpus"); D. 10 ¶¶ 247–49 (similar allegations).

Here, Koufos alleges that the transfer of the mortgage instruments into the Trust violated the Trust's Governing Documents as follows: Koufos states that the Trust's Governing Documents state that only the "Depositor," who is defined as Credit Suisse First Boston Securities Corp., can transfer mortgages and notes into the Trust, and that any assignment had to happen before the Trust "Closing Date" of August 8, 2005. D. 10 ¶¶ 31–35, 154–58. Koufos argues that SPS's transfer of the note and mortgage on behalf of New Century to U.S. Bank made in April, 2009 "was in direct contravention of the terms of the Defendant Trust's Governing Documents, as it took place by an entity other than the 'Depositor' [and occurred] almost four ... years after the Closing Date of August 08, 2005." D. 10 ¶ 176.

■ But Koufos has no ability to challenge an assignment to the Trust based on purported restrictions in the *receiving* Trust's Governing Documents, where this claim at most is a "challenge [to] shortcomings in an assignment that render [the assignment] merely voidable at the election of one party but otherwise effective to pass legal title." *Culhane*, 708 F.3d at 291. Unlike the alleged problems discussed above (i.e., that an assignor had nothing to assign, or was contractually barred from making a particular assignment), the alleged problem of a trust not complying with the terms of its Trust Governing Documents is an ancillary consideration that does not void the transfer. "Even if th[e] direct assignment[s] were somehow violative of [one of the Governing Documents], giving rise to unfavorable tax, regulatory, contractual, and tort consequences, neither the [Governing Documents] nor those consequences would render the assignment itself invalid." *In re Samuels*, 415 B.R. 8, 22 (Bankr.D.Mass.2009); *see also Butler*, 2012 WL 3518560, at *7 (collecting cases

"in this district holding that a mortgagor does not have standing to challenge a foreclosure on the basis of the non-compliance of an assignment with the provisions of [rules] governing a foreclosing trust," and distinguishing "between void and voidable assignments"); *Culhane*, 708 F.3d at 288–89 (favorably citing *Butler* ). The Court dismisses this aspect of Count III.[5]

■ The Court does, however, dismiss Count II that seeks a declaratory judgment holding that U.S. Bank does not have standing "as a real party in interest to legally enforce the Plaintiff's promissory note." D. 10 ¶ 243. The only dispute alleged under Count II relates to U.S. Bank's foreclosure action, and as Koufos himself acknowledges, if U.S. Bank had any right to foreclose, it would be through "the contractual right to enforce the power of sale in the Koufos *mortgage*," D. 10 ¶ 10 (emphasis added), incorporating the statutory power of sale. Under Massachusetts law in effect at the time that foreclosure proceedings began, a mortgagee did not need to produce or even hold the note to foreclose. *Eaton v. Fed. Nat. Mortg. Ass'n,* 462 Mass. 569, 588, 969 N.E.2d 1118 (2012) (leaving undisturbed prior practice requiring "the mortgagee to hold only the mortgage, and not the note, in order to effect a

valid foreclosure by sale"); *McKenna v. Wells Fargo Bank, N.A.,* 693 F.3d 207, 215 (1st Cir.2012) (enforcing prospective application of *Eaton* ); *see, e.g., Lowenstern v. Residential Credit Solutions,* No. 11–11760–MLW, 2013 WL 697108, at *6 (D.Mass. Feb. 25, 2013) (rejecting a wrongful foreclosure claim where, "[a]t the time of the notice of foreclosure in this case [before the *Eaton* decision] … a person or entity could lawfully foreclose pursuant to a power of sale holding only the mortgage but not the note"). "[F]ederal courts do not issue advisory opinions. In particular, a federal court may only exercise jurisdiction … if it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " " *Igartúa–De La Rosa v. United States,* 417 F.3d 145, 153 (1st Cir. 2005) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Although Koufos alleges that "[U.S. Bank] seeks to enforce the Plaintiff's promissory note," D. 10 ¶ 235, he does not allege any facts to support that claim, either within Count II or in ¶¶ 1–198 incorporated by reference, and declaratory relief as to U.S. Bank's standing to enforce the note would not redress the alleged injury.

---

5. Because trust law is state law, the Court has satisfied itself that *ultra vires* trust transactions are voidable (and not void) in both New York or Massachusetts, the two states facially related to this matter. Choice of law issues are not addressed by either party. Koufos alleges that the Trust is a New York trust. D. 10 ¶ 149. The case is before this Court on diversity jurisdiction, having been removed from Massachusetts state court. D. 1. Under Massachusetts law, the state's law used to evaluate "equitable removal of assets wrongfully transferred to a trust" comes from the state that "has the most significant relationship to the transaction." *Nile v. Nile,* 432 Mass. 390, 401, 734 N.E.2d 1153 (2000). If New York law were to apply here, the Court finds persuasive the detailed analysis of this issue in *Bank of America Nat. Ass'n v. Bass-*

*man FBT, L.L.C.,* 2012 IL App (2d) 110729, 366 Ill.Dec. 936, 981 N.E.2d 1, 8–10 (Ill.App. Ct.2012) (noting apparent contradictions under New York law, but ultimately concluding that *ultra vires* trust transactions are voidable rather than void). If Massachusetts law applies, this state's law suggests the same result. *See Westminster Nat. Bank v. Graustein,* 270 Mass. 565, 576–77, 170 N.E. 621 (1930) (adopting view that "a conveyance of real estate to a corporation for a purpose not authorized by its charter is not void, but voidable [and] cannot be successfully assailed by the debtor or by subsequent mortgagees because the bank was without authority to take it") (quoting *Kerfoot v. Farmers' & Merchants' Bank,* 218 U.S. 281, 286, 31 S.Ct. 14, 54 L.Ed. 1042 (1910)).

### C. *The Court Dismisses Count IV Alleging Violation of Mass. Gen. L. c. 93A*

■ Count IV alleges that U.S. Bank violated Mass. Gen. L. c. 93A, that permits a person to bring an action where he or she has been damaged by an "unfair or deceptive act or practice." Mass. Gen. L. c. 93A, § 9(2). Under c. 93A, the plaintiff must send a letter to the prospective defendant "[a]t least thirty days prior to the filing of any [claim, including] a written demand for relief, . . . and [a] reasonabl[e] descri[ption of] the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. L. c. 93A, § 9(3). This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir.2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 813, 333 N.E.2d 202 (1975)). The purpose of the demand letter is "to encourage negotiation and settlement" and to "control . . . the amount of damages." *McKenna*, 693 F.3d at 218 (internal quotation marks and citations omitted). Here, Koufos concedes that he did not send a demand letter to U.S. Bank or SPS before bringing suit. He cites four reasons why the demand letter doesn't apply, as described below. All four arguments were considered and rejected in *McKenna*, 693 F.3d at 218.

First, Koufos argues that a demand letter is not required because U.S. Bank and SPS violated the MCCCDA, Mass. Gen. L. c. 140D, and in doing so they automatically violated Chapter 93A. D. 10 ¶ 265; Pl. Mem., D. 16 at 15; *see* Mass. Gen. L. c. 140D, § 34. However, there is "no such exception [to the demand letter requirement] for 'per se' violations." *McKenna*, 693 F.3d at 218. Second, Koufos argues that the demand letter requirement does not apply "because [Koufos] is asserting his claims defensively against the foreclosure action." D. 10 ¶ 263. Here, Koufos presses his c. 93A claim as part of his direct claims against Defendants and thus is not excused from the demand letter requirement. *McKenna*, 693 F.3d at 218. Third, and Fourth, Koufos argues that the demand letter requirement does not apply where "Defendants do not maintain a place of business and/or do not keep assets within this Commonwealth," D. 10 ¶ 264, because a mortgage is not an "asset." Pl. Opp., D. 16 at 15. It is true that the demand letter requirement "does not apply . . . 'if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth.'" *Okoye v. Bank of New York Mellon*, No. 10–11563–DPW, 2011 WL 3269686, at *4 (D.Mass. July 28, 2011) (quoting Mass. Gen. L. c. 93A, § 9(3)). However, pending resolution of the validity of the 2009 assignment as discussed earlier in this memorandum, U.S. Bank and SPS "clearly keep assets within Massachusetts, one of those assets being a real property interest in the home where [Koufos] resided." *McKenna*, 693 F.3d at 218. All of these arguments are unavailing, and Koufos's claim must fail where he concedes that he did not send the requisite demand letter.

■ As U.S. Bank and SPS argue, D. 15 at 9, an additional basis for dismissing the c. 93A claim is that the claim is time-barred. Here the stated c. 93A violations are all alleged to concern the "origination" of Koufos's loan. D. 10 ¶ 260. Koufos alleges that he entered into his loan on January 28, 2005, D. 10 ¶ 7, but he did not file this action until April 24, 2012, outside of the four-year statute of limitations for c. 93A claims. *See* Mass. Gen. Laws c. 260, § 5A; *Okoye*, 2011 WL 3269686, at *4.

### D. The Court Does Not Dismiss Count V Alleging a Civil Conspiracy

Count V alleges a civil conspiracy by all defendants. D. 10 ¶¶ 267–82. Koufos alleges both forms of conspiracy recognized under Massachusetts law: coercive conspiracy (also sometimes called "true conspiracy") and "concerted action" conspiracy. D. 10 ¶¶ 267–82; *Shirokov v. Dunlap, et al.,* No. 10–12043–GAO, 2012 WL 1065578, at *25–26 (D.Mass. Mar. 27, 2012) (quoting *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.,* 62 F.Supp.2d 236, 244 (D.Mass.1999)).

In brief, the distinction between the two versions is this: For "true conspiracy" the plaintiff must prove that concerted action gave the defendants a "peculiar power of coercion" over the plaintiff enabling them to bring about results that are different in kind from what any of them could achieve individually. The exercise of this "peculiar power of coercion" is itself the wrong, and no other tortious act need be shown. In contrast, the "concerted action" version extends liability to those who assist or encourage others to commit torts without necessarily any proof either of a "peculiar power of coercion" or even of an explicit agreement among the defendants. Of course, there can be no joint liability for a tort unless there has been a tort, so the "concerted action" version depends on proof of underlying tortious conduct for which liability can be assigned.

*Mass. Laborers' Health & Welfare Fund,* 62 F.Supp.2d at 244. Koufos alleges both forms of conspiracy.

#### 1. Koufos Fails to State A Claim For "True Conspiracy"

Koufos facially fails to allege a "true conspiracy" where even accepting his allegations as true, Koufos asserts individual acts "that the other Defendants could not have accomplished on their own." D. 10 ¶¶ 273–275. This is the opposite of what is required to show a "true conspiracy," which is that Defendants collectively were able to "bring about results that are different in kind from what any of them could achieve individually." *Shirokov,* 2012 WL 1065578, at *25–26 (quoting *Mass. Laborers' Health & Welfare Fund,* 62 F.Supp.2d at 244). For example, one of Koufos's "true conspiracy" allegations in its entirety states, "New Century Mortgage Corporation willfully induced Plaintiff to undertake the mortgage loan in question based solely upon the liquidation value of Plaintiff's residence, something the other Defendants could not have accomplished on their own." D. 10 ¶ 274. Each of the allegations of "true conspiracy" follow this form, stating the opposite of a "true conspiracy," since Koufos is alleging that individual defendants did not need a "force of numbers acting in unison" to perform the allegedly conspiratorial acts. *Shirokov,* 2012 WL 1065578, at *25 (quoting *Fleming v. Dane,* 304 Mass. 46, 50, 22 N.E.2d 609 (1939)). The Court dismisses the "true conspiracy" portion of Court V.

#### 2. Koufos States A Claim For "Concerted Action" Tort–Based Conspiracy

The "concerted action" variant of civil conspiracy requires "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1564 (1st Cir.1994). "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." *Kurker v. Hill,* 44 Mass.App.Ct. 184, 189, 689 N.E.2d 833 (1998). Koufos identifies the "wrongful collection, and conversion of, Plaintiff's mortgage payments, and the

current foreclosure action" as underlying torts and also alleges that "there was an agreement between at least 2 parties (some undisclosed) to perform these acts. D. 10 ¶ 279. Drawing every inference in favor of Koufos at this juncture and interprets his claim to allege an agreement among Defendants for all torts identified. Accordingly, the allegations here are sufficient to survive U.S. Bank and SPS's joint motion to dismiss.

### E. *Koufos States a Claim for Unjust Enrichment in Count VI as to SPS*

Count VI alleges that "making, servicing, and litigating the foreclosure [of the] loan described herein" have unjustly enriched "[a]ll Defendants." D. 10 ¶¶ 283–85. "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Santagate v. Tower*, 64 Mass.App.Ct. 324, 329, 833 N.E.2d 171 (2005) (quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D.Mass.1982)). A claim for unjust enrichment requires three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value" *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir.2009) (citing Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*, § 68:5 (4th ed. 2003)).

As to Defendant U.S. Bank, Koufos does not allege that U.S. Bank has received any benefit through its actions. Koufos does not allege that any foreclosure has occurred, and the Court has cannot find any reference beyond the conclusory statement cited above, D. 10 ¶ 284, to support a claim the U.S. Bank has unjustly received anything from Koufos. Because there is no allegation of a realized tort, the Court dismisses this claim as to U.S. Bank.

As to Defendant SPS, Koufos's alleges that "Defendant SPS purportedly billed and serviced, and accepted payments for Plaintiff's loan on behalf of entity(s) that has no legal right to any claim of ownership of Plaintiff's loan ...." D. 10 ¶ 275.[6] Noting that "Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment," *Mass. Eye & Ear Infirmary*, 552 F.3d at 57, under these circumstances where Koufos's allegation is that SPS had no right to bill and service his loan on behalf of an incorrect owner, this claim withstands the joint motion to dismiss.

### F. *The Court Dismisses Count VII Alleging a Violation of Mass. Gen. L. c. 140D, the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA")*

Count VII alleges that U.S. Bank and SPS did not make the proper disclosures to him "mandated under G.L. c. 140D § 12, and its implementing Regulation 209 CMR 32.00, et seq." D. 10 ¶ 287. These disclosures relate to the terms of issuance of new credit. As U.S. Bank and SPS point out, this claim is time-barred. MCCCDA has a maximum four-year window to seek damages or a loan rescission where a lender has failed to provide all "material disclosures." Mass. Gen. L. c. 140D, § 10(f); *see Raad v. Lime Fin.*

---

**6.** Koufos does not incorporate D. 10 ¶ 275 into his claim for unjust enrichment, but the Court treats this omission as a typographic error, where he seeks to re-allege "all" prior paragraphs. *See* D. 10 ¶ 283 (stating that "Plaintiff repeats and re alleges [sic] all prior paragraphs 1–262 above as if set forth fully herein").

*Servs., Ltd.,* No. 11–11791–DJC, 2012 WL 4469107, at *5 (D.Mass. Sept. 28, 2012). Here, overlooking that Koufos does not allege which disclosures were omitted, Koufos has brought this claim over seven years after the origination of his mortgage and after the four-year window has run. The Court dismisses Count VII.

### G. *The Court Dismisses Count VIII Alleging Intentional and Negligent Infliction of Emotional Distress*

 Count VIII asserts that U.S. Bank and SPS intended to inflict emotional distress to Koufos or took actions that those defendants knew or should have known were likely to result in Koufos's emotional distress. D. 10 ¶ 291–95. Under Massachusetts's law, to state a claim for intentional infliction of emotional distress the claimant must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Limone v. United States,* 579 F.3d 79, 94 (1st Cir.2009) (quoting *Agis v. Howard Johnson, Co.,* 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976)); *Anderson v. Boston Sch. Comm.,* 105 F.3d 762, 766–67 (1st Cir.1997). "Courts have recognized that '[w]hile home foreclosure is a terrible event and likely fraught with unique emotions and angst, foreclosures, even ones that may involve improper conduct, do not readily go beyond all possible bounds of decency.'" *Payton v. Wells Fargo Bank, N.A.,* No. 12–11540–DJC, 2013 WL 782601, at *4 (D.Mass. Feb. 28, 2013) (quoting *Alvarez v. U.S. Bank N.A.,* No. 11–12324–FDS, 2012 WL 2394680, at *9 (D.Mass. June 22, 2012) (internal quotations and citations omitted)). Here, Koufos's few conclusory allegations of "continued threats to collect upon and enforce a legally enforceable debt" and the "drafting and executi[on] of legally deficient documents to deceive this [C]ourt of its standing in this matter," D. 10 ¶¶ 290–94, are insufficient to state a claim of intentional infliction of emotional distress.

Further, although this claim is captioned as "Intentional and Negligent Infliction of Emotional Distress," Koufos in his claim does not allege the elements required to show a negligent infliction of emotional distress. *See Ethridge v. PNC Bank, N.A.,* No. 11–12256–GAO, 2012 WL 4023690, at *1 (D.Mass. Sept. 11, 2012) (noting that to state a claim for negligent infliction of emotional distress, "the plaintiff must [allege] both [a] duty and [a] breach"); *Surabian v. HSBC Bank USA, NA,* No. 11–10053–DPW, 2012 WL 1035235, at *3 (D.Mass. Mar. 26, 2012) (noting that a required element to allege negligent infliction of emotional distress includes "physical harm"). For all of these reasons, the Court dismisses Count VIII.

### H. *The Court Denies U.S. Bank and SPS's Motion to Strike*

 U.S. Bank and SPS have moved to strike Koufos's amended verified complaint, as "unanswerable in its current form" where it fails "to comply with the short and plain pleading requirement, ... quotes from Bankruptcy Court hearing transcripts, characterizes documents, and includes improper legal citations, argument, and commentary." *See* Fed.R.Civ.P. 8; Fed.R.Civ.P. 12(f) (permitting a court to "strike from a pleading ... any redundant, immaterial [or] impertinent ... matter"). Koufos's amended verified com-

plaint contains 295 paragraphs and a 925 page appendix, and he acknowledges his filing as "verbose." D. 10 at 7 n. 9. Having carefully worked through the complaint, the Court finds that while Koufos's complaint is unorthodox, it is sufficiently comprehensible to proceed, especially in light of this Court's ruling that reduces the number of live issues.

## IV. Conclusion

U.S. Bank and SPS's joint motion to dismiss, D. 14, is GRANTED in part and DENIED in part as follows: The Court DISMISSES Counts I, II, IV, V (only as to the claim of "true conspiracy"), VI (only as to U.S. Bank), VII and VIII. The Court LIMITS the scope of Count III consistent with the terms of this memorandum, and DENIES U.S. Bank and SPS's request to strike Koufos's amended complaint.

**So Ordered.**

### *MEMORANDUM & ORDER*

Koufos has filed a motion to alter the judgment announced by this Court in its March 21, 2013 Memorandum and Order, D. 26. D. 30. For the reasons discussed below, that motion is GRANTED in part and DENIED in part. The Court considers Koufos's arguments in the order he presents them in his supporting memorandum, D. 31.

## I. The Court Denies Koufos's Motion to Alter Its Judgment as to Count II

Koufos's first argument is that the recent unpublished Massachusetts Appeals

Court opinion in *HSBC Bank USA, N.A. v. Norris*, 83 Mass.App.Ct. 1115, 1115, 983 N.E.2d 749 (2013), issued prior to this Court's order dated March 21, 2013, "has partially abrogated [the] prospective effect of *Eaton* [*v. Fed. Nat'l Mortgage Ass'n*, 462 Mass. 569, 588, 969 N.E.2d 1118 (2012) ]." D. 31 at 3–4. The *Norris* court applied the rule announced in *Eaton* that a mortgagee must possess both the mortgage and the related note to conduct a valid foreclosure to plaintiff Norris where he had "advanced the same arguments to [the Massachusetts Appeals Court] at the same time those arguments were being considered by the Supreme Judicial Court." *Norris*, 83 Mass.App.Ct. at 1115, 983 N.E.2d 749; see *Eaton*, 462 Mass. at 583–85, 969 N.E.2d 1118. The *Norris* court ruled that Norris should receive the benefit of the otherwise-inapplicable *Eaton* decision for "the same reason that the Supreme Judicial Court applied its ruling retroactively to Eaton [herself]." *Norris*, 83 Mass.App.Ct. at 1115, 983 N.E.2d 749; [1] see also *Lyons v. Mortgage Electronic Registration Sys.*, 83 Mass.App.Ct. 1134, 1134, 988 N.E.2d 472 (2013) (unpublished) (applying *Norris* logic to another "case on appeal when *Eaton* was decided"); D. 41 (citing *Lyons* ).

The reason that the Supreme Judicial Court gave plaintiff Eaton the benefit of an otherwise prospective ruling was because she was the party that brought the case that announced a new rule. *Eaton*, 462 Mass. at 589, 969 N.E.2d 1118 (declaring that "[a]lthough we apply the rule ar-

1. The Supreme Judicial Court heard *Eaton* after *sua sponte* transferring that case from the Massachusetts Appeals Court, *Eaton*, 462 Mass. at 571, 969 N.E.2d 1118 (writing that "[w]e transferred the case to this court on our own motion"), but the Supreme Judicial Court did not transfer *Norris* for further appellate review. Because the *Norris* court concluded that plaintiff Norris was "procedurally in the identical situation" as *Eaton*, i.e., that

both cases were on review before appellate courts with similar powers, it opined that a decision not to apply *Eaton's* ruling would be "arbitrary." *Norris*, 83 Mass.App.Ct. at 1115, 983 N.E.2d 749 (noting that "[i]t is certainly not Norris's fault that the issue was first decided favorably in *Eaton's* case rather than in his, and it would be inequitable to deprive him of its same resolution").

ticulated in this case prospectively, we nonetheless apply it to [this] appeal because it has been argued to this court by Eaton"). In so holding, the court noted its discretion to award relief to the party bringing suit even where similarly situated plaintiffs were not entitled to relief of a prospective decision. *Id.* (citing *Bouchard v. DeGagne*, 368 Mass. 45, 48–49, 329 N.E.2d 114 (1975) (party seeking relief may be entitled to benefit from rule announced in a case, even when other "somewhat similarly situated [parties] are not afforded the benefit of retroactive application of the principles established by that first appellate determination"); *Tucker v. Badoian*, 376 Mass. 907, 918–19, 384 N.E.2d 1195 (1978) (Kaplan, J., concurring) ("suggesting that when a newly announced rule is given prospective effect, that rule may still apply to the case at bar if parties raised the issue; declining to apply new rule, however, where parties appeared to accept that the old rule would apply to them"); *Powers v. Wilkinson*, 399 Mass. 650, 663–65, 506 N.E.2d 842 (1987) (Abrams, J., concurring in part and dissenting in part) (discussing reasons in favor of applying a new rule to the particular litigants involved in a case)).

Here, Koufos is not "procedurally in the identical situation" as the plaintiffs in *Norris* or *Eaton*. See *Norris*, 83 Mass.App. Ct. at 1115, 983 N.E.2d 749. Here, Koufos is procedurally before this Court, which is bound by decisions of the state's highest court announcing the prospective nature of state rules. *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 215 (1st Cir. 2012) (citing *Wainwright v. Stone*, 414 U.S. 21, 24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973)). This difference matters and explains why *Norris* is inapplicable. The Supreme Judicial Court was surely aware that other cases like *Eaton* were in the trial court pipeline and could have shaped its holding accordingly to apply to those pending cases. It did not, and instead the

Supreme Judicial Court chose to "exercise [its] discretion" and apply its ruling only to cases where "the mandatory notice of sale has been given after the date of t[he *Eaton*] opinion." *Eaton*, 462 Mass. at 588–89, 969 N.E.2d 1118. This decision was purposeful; the Supreme Judicial Court recognized the "exceptional circumstances" presented in *Eaton* where "the defendants and several amici [had represented] that lawyers and others who certify or render opinions concerning real property titles [had] followed in good faith a different interpretation of the relevant statutes ... that require[d] the mortgagee to hold only the mortgage, and not the note, in order to effect a valid foreclosure by sale." *Id.* The Supreme Judicial Court noted the concern that the *Eaton* holding, if applied retrospectively, could "wreak havoc with the operation and integrity of the title recording and registration systems" and purposely avoided a retroactive application. *Id.* at 586, 969 N.E.2d 1118.

Koufos's argument here that the unpublished *Norris* decision "has partially abrogated the prospective effect" of *Eaton* is unavailing. Indeed, after *Norris* was decided, a three-judge panel of the Massachusetts Appeals Court that included one of the judges on the three-judge *Norris* panel denied relief to the mortgagor in *Reynolds v. GMAC Mortgage, LLC*, 83 Mass.App.Ct. 1124, 1124, 985 N.E.2d 413 (2013) (unpublished), on the ground that "[a]s a result of *Eaton*, which applies prospectively to foreclosure proceedings where the notice of mortgage foreclosure sale is given after *Eaton* was decided, the foreclosing mortgage holder must either hold the note or act on behalf of the note holder at the time of the notice of sale and the foreclosure sale." Noting that the notice of sale date in *Reynolds* pre-dated the *Eaton* decision, the *Reynolds* court noted that "[t]he case before us, therefore, is not controlled by *Eaton*." *Id.* The Court

reaches the same conclusion here, where the notice of sale to Koufos predated the *Eaton* decision. For these reasons, the Court affirms its dismissal of Count II.

## II. The Court Denies Koufos's Motion to Alter Its Judgment as to Count IV

The Court declines to alter its judgment dismissing Court IV alleging a violation of Mass. Gen. L. c. 93A, for all of the reasons given in its Memorandum and Order, D. 26, at 11–13. This includes, but is not limited to, the reasoning (not addressed by Koufos in his motion to amend the judgment) that his c. 93A claim is time-barred.

## III. The Court Grants Koufos's Motion to Alter Its Judgment as to Count VI

Koufos argues that this Court should reconsider its dismissal of the unjust enrichment claim against Defendant U.S. Bank. The Court in its recent order did not dismiss Koufos's unjust enrichment claim as to Defendant SPS. Explaining the difference in treatment of this count as to these two defendants, this Court wrote:

As to Defendant U.S. Bank, Koufos does not allege that U.S. Bank has received any benefit through its actions. Koufos does not allege that any foreclosure has occurred, and the Court has cannot find any reference beyond the conclusory statement [that "By their wrongful acts and omissions, including but not limited to making, servicing, and litigating the foreclosure thereof; the predatory and unfair mortgage loan described herein, All Defendants have been unjustly enriched at the expense of Plaintiff, and thus Plaintiff has been unjustly deprived"], D. 10 ¶ 284, to support a claim the U.S. Bank has unjustly received anything from Koufos. Because there is no allegation of a realized tort, the Court dismisses this claim as to U.S. Bank.

As to Defendant SPS, Koufos alleges that "Defendant SPS purportedly billed and serviced, and accepted payments for Plaintiff's loan on behalf of entity(s) that has no legal right to any claim of ownership of Plaintiff's loan . . . ." D. 10 ¶ 275. [Here, the Court noted in a footnote that "Koufos does not incorporate D. 10 ¶ 275 into his claim for unjust enrichment, but the Court treated this omission as a typographic error, where he seeks to re-allege "all" prior paragraphs."] Noting that "Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment," . . . , under these circumstances where Koufos's allegation is that SPS had no right to bill and service his loan on behalf of an incorrect owner, this claim withstands the joint motion to dismiss.

D. 26 at 15–16. Koufos points out that in his amended verified complaint, he pled in one subparagraph in the section describing the alleged civil conspiracy claim, that "[t]he affirmative steps in the furtherance of the conspiracy were . . . the purported U.S. Bank as Trustee's purported wrongful receipt of Plaintiff's monthly payments on behalf of the Trust." D. 10 ¶ 280(d). In light of this Court's allowance of the incorporation of another paragraph of the conspiracy claim to support Koufos's allegations regarding unjust enrichment against SPS, and this Court's further review finding that D. 10 ¶ 280(d) can be read to support a claim for unjust enrichment, this Court allows Koufos's motion to amend its earlier judgment to reinstate the unjust enrichment claim as to U.S. Bank.

## IV. The Court Denies Koufos's Motion to Alter Its Judgment as to Issues Related to the Trust's Governing Documents

The Court declines to alter its judgment dismissing so much of Koufos's argument that challenged the alleged "documented

failure of the trust to follow its own controlling terms of its own Governing Documents," D. 31 at 9, for all of the reasons given in its Memorandum and Order, D. 26, at 8–11.[2] Moreover, Koufos did not address choice of law issues in his original filings and raises arguments relating to New York and Massachusetts trust law for the first time in his motion to amend this Court's judgment. The Court's earlier Memorandum and Order sufficiently addressed this issue. *See* D. 26 at 10 n. 5.

## V. Conclusion

For the above reasons, the Court DENIES Koufos's motion to amend this Court's earlier judgment except that the Court ALLOWS Koufos's request to reinstate Court VI, alleging unjust enrichment, as to Defendant U.S. Bank. The Court ORDERS Defendant U.S. Bank to file an amended answer reflecting this decision within 14 days of the date of this Order.

**So Ordered.**

---

2. Koufos has recently filed a notice of supplemental authority, D. 40, which brings to the Court's attention an unpublished decision of a New York state trial court, *Wells Fargo Bank, N.A. v. Erobobo*, No. 31648/2009, 2013 WL 1831799, 39 Misc.3d 1220(A) (N.Y.Sup.Ct. April 29, 2013), and an unpublished case citing that decision, *In re Saldivar*, 2013 WL 2452699, at *4 (Bankr.S.D.Tex. June 5, 2013). The *Erobobo* court, citing N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney 2002) and without further analysis, held that the violation of terms contained in a Pooling and Servicing Agreement (PSA) regulating the timing of asset transfers and the identity of the trust "Depositor" would void the transfer of an asset into a trust. *Erobobo*, 2013 WL 1831799 at *8–9. The *Saldivar* court adopted the *Erobobo* court's finding that such transfers are void. 2013 WL 2452699, at *4. The heft of *Erobobo's* statutory argument was considered and rejected by the "detailed analysis of this issue in *Bank of America Nat. Ass'n v. Bassman FBT, L.L.C.,* [2012 IL App (2d) 110729] 366 Ill.Dec. 936, 981 N.E.2d 1, 8–10 (Ill.App.Ct.2012)." D. 26 at 10 n. 5. This Court found the *Bassman* reasoning persuasive. *Id.* The Court also notes that other district courts have recently construed New York law in the same manner as this Court's earlier order. *Calderon v. Bank of America N.A.,* 941 F.Supp.2d 753, 766–67, 2013 WL 1741951, at *11–12 (W.D.Tex.2013) (collecting New York cases, stating that "New York case law … makes clear that section 7-2.4 is not applied literally in New York" and holding that "even if it is true that the Note was transferred to the Trust in violation of the PSA, that transaction … is merely voidable" (internal quotation omitted)); *Sigaran v. U.S. Bank Nat. Ass'n,* 2013 WL 2368336, at *3 (S.D.Tex. May 29, 2013) (holding that "assignments made after the Trust's closing date are voidable, rather than void").