# United States Court of Appeals
## For the First Circuit

No. 11-1650

SUZETTE MCKENNA,

Plaintiff, Appellant,

v.

WELLS FARGO BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Boudin, Circuit Judge.

Glenn F. Russell, Jr. with whom Law Office of Glenn F. Russell, Jr. was on brief for appellant.
Jeffrey S. Patterson with whom Morgan T. Nickerson and Nelson Mullins Riley & Scarborough LLP were on brief for appellee.

August 16, 2012

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BOUDIN**, **Circuit Judge**. On November 9, 2006, Charles McKenna entered into a loan refinancing agreement with Wells Fargo Bank, N.A., evidently to help pay for his children's college education. As part of the transaction, Charles McKenna and his wife, Suzette McKenna, granted Wells Fargo a mortgage on their residence in South Orleans, Massachusetts. On the same day, Wells Fargo provided the McKennas with a disclosure form stating the loan amount and terms. On November 15, 2006, the mortgage was recorded at the Barnstable County Registry of Deeds.

Charles McKenna died of a heart attack on May 24, 2009, at age 54, leaving his wife as administratrix of his estate. Some time thereafter, Suzette McKenna fell behind on her monthly mortgage payments. Under Massachusetts law, if a mortgage gives the mortgage holder the "power of sale" (as the McKennas' mortgage did), the mortgagee may foreclose--without a court judgment ordering the sale--after a "limited judicial procedure" to establish that the mortgagor is not a present or recent member of the armed forces, which Suzette McKenna was not.[1]

Wells Fargo successfully brought such a proceeding in Massachusetts Land Court in October 2009. Then, on January 14, 2010, Wells Fargo sent Suzette McKenna a statutory notice of

---

[1]See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011). The Servicemembers Civil Relief Act, 50 U.S.C.S. App'x § 533 (LexisNexis 2012), precludes foreclosure if the mortgagor has been an active member of the uniformed services within the previous nine months.

-2-

foreclosure sale informing her that the bank intended to auction her home on or after February 16 of that year. Suzette McKenna countered by writing to assert a right to rescind the mortgage and then filing suit to preclude the foreclosure sale--her lawsuit being the origin of the appeal now before us.

In a letter that she sent to Wells Fargo on February 6, 2010, Suzette McKenna claimed a right to rescind on the grounds that (1) Wells Fargo had provided her and Charles McKenna with only one Truth in Lending disclosure statement at the time of the loan rather than two copies, and (2) Wells Fargo had understated the finance charge in its Truth in Lending statement by "more than $35.00." On February 11, 2010, Suzette McKenna filed a complaint in Barnstable County Superior Court seeking an injunction to prevent Wells Fargo from proceeding with the foreclosure sale. Five days later, the Superior Court issued a preliminary injunction restraining Wells Fargo from taking further action to sell Suzette McKenna's home.[2]

On March 10, 2010, Wells Fargo removed the case to the federal district court in Massachusetts. The bank asserted that

---

[2]Wells Fargo informs us in its supplemental brief that Suzette McKenna's home was sold at a foreclosure auction in February 2012. This fact suggests that Suzette McKenna's claims for injunctive relief may be moot, but her amended complaint includes a request for damages, and a "generalized claim" for monetary damages may be sufficient to prevent dismissal on grounds of mootness, even where claims for injunctive relief "appear to be moot." Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps., 466 U.S. 435, 441-42 & n.5 (1984).

-3-

federal question jurisdiction existed over what it deemed (incorrectly) to be Suzette McKenna's federal claims, supplemental jurisdiction over her related state law claims, and diversity jurisdiction over the entire action due to the amount in controversy and diversity of citizenship. No one thereafter appears to have contested subject matter jurisdiction, although Wells Fargo has raised challenges to our appellate jurisdiction, which we address below.

Following a seven-count amended complaint filed on September 3, 2010, Wells Fargo moved to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and the district court granted the motion. McKenna v. Wells Fargo Bank, N.A., No. 10-10417-JLT, 2011 U.S. Dist. LEXIS 28719, 2011 WL 1100160 (D. Mass. Mar. 21, 2011) (the "12(b)(6) order"). Suzette McKenna's timely motion to alter, amend, or vacate the judgment, Fed. R. Civ. P. 59(e), 60(b)(2) (the "motion for reconsideration"), was denied on May 11, 2011. Suzette McKenna filed a notice of appeal on June 6, 2011.

At the outset we face questions relating to the district court's subject matter jurisdiction which we are required to consider sua sponte where jurisdiction is in doubt. McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). Here, Wells Fargo's primary assertion in its removal papers--that there is federal question jurisdiction present in this case--turns out to be mistaken because

-4-

no federal claim is presented. In the end, however, diversity jurisdiction does appear sufficient to support the state statutory claims that are asserted in the complaint.

The federal Truth in Lending Act ("TILA") gives homeowners a right to rescind certain credit transactions, 15 U.S.C. § 1635(a) (2006), and creates a private right of action for damages, 15 U.S.C. § 1640, which would ordinarily satisfy federal question jurisdiction. 28 U.S.C. § 1331. But although Suzette McKenna's amended complaint makes passing reference to the federal TILA, she styles all of her claims as arising under state law, including the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D.

This may have been done because a federal TILA claim for rescission must be brought within three years of the transaction, 15 U.S.C. § 1635(f), while the MCCCDA allows four years, Mass. Gen. Laws ch. 140D, § 10(f), and McKenna's suit appears to satisfy the latter time requirement but not the former. There are also unsettled questions as to what federal rights are displaced and what others remain where, as is the case with Massachusetts, the Federal Reserve has exempted a state from various TILA's provisions on the grounds that state law establishes "substantially similar" requirements. See Palmer v. Champion Mortg., 465 F.3d 24, 27 n.4 (1st Cir. 2006) (discussing one such "unsettled" question); cf. 15

-5-

U.S.C. § 1633; 12 C.F.R. § 226.29 (2011); 47 Fed. Reg. 42,171 (Sept. 24, 1982).

While "the MCCCDA was 'closely modeled' after the TILA and, in most respects, 'mirrors its federal counterpart,'" DiVittorio v. HSBC Bank USA, NA (In re DiVittorio), 670 F.3d 273, 282-83 (1st Cir. 2012) (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007)), an MCCCDA claim on its own almost surely does not satisfy federal question jurisdiction, cf. Belini, 412 F.3d at 28 (relying on supplemental jurisdiction statute, 28 U.S.C. § 1367, for federal jurisdiction over MCCCDA claim).

One out-of-circuit precedent suggests that "federal courts continue to have [federal question] jurisdiction over any civil suit claiming violation of [an exempt state]'s disclosure requirements," Ives v. W. T. Grant Co., 522 F.2d 749, 753-54 (2d Cir. 1975). But we are not persuaded; our circuit has only found such federal question jurisdiction to exist where, unlike this case, the plaintiff explicitly pleads a federal section 1640 claim under TILA. See Belini, 412 F.3d at 28; Bizier v. Globe Fin. Servs., Inc., 654 F.2d 1, 4 (1st Cir. 1981).

However, the removal can be supported by diversity jurisdiction, which requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. See 28 U.S.C. §§ 1332(a), 1441. Suzette McKenna is a citizen of

Massachusetts. Well Fargo, a national bank, is a citizen of the state where it is "located," 28 U.S.C. § 1348; this is "the State designated in its articles of association as its main office," Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006); and "Wells Fargo is a citizen of South Dakota for diversity purposes." Hargrow v. Wells Fargo Bank N.A., No. 11-1806, 2012 U.S. App. LEXIS 13638, at *4, 2012 WL 2552805, at *2 (6th Cir. July 3, 2012).

As for the $75,000 amount-in-controversy requirement, "[n]umerous [district] courts have held that, where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount," Ngoc Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010),[3] although other courts have calculated the amount in controversy by reference to alternative criteria, including, inter alia, "the unpaid principal balance on the note as of the date of removal," see RC Lodge, LLC v. SE Prop. Holdings, LLC, No. 12-0112, 2012 U.S. Dist. LEXIS 98199, at *4, 2012 WL 2898815, at *1 (S.D. Ala. July 16, 2012).[4]

_____

[3]See, e.g., Davis v. World Sav. Bank, FSB, 806 F. Supp. 2d 159, 165 (D.D.C. 2011); Olander v. ReconTrust Corp., No. C11-177, 2011 U.S. Dist. LEXIS 22397, at *6-7, 2011 WL 841313, at *2-3 (W.D. Wash. Mar. 7, 2011); Stonebridge Bank v. Nita Props., LLC, No. 09-5145, 2011 U.S. Dist. LEXIS 9674, at *6, 2011 WL 380759, at *3 (D.N.J. Jan. 31, 2011); Kirby v. Bank of Am., N.A., No. 09-182, 2009 U.S. Dist. LEXIS 124229, at *11-12, 2010 WL 114201, at *2 (S.D. Miss. Jan. 6, 2009).

[4]Other variations include "the fair market value of the property" in question, see Reyes v. Wells Fargo Bank, N.A., No.

-7-

The face-value-of-the-loan rule, of course, has the advantage of perfect simplicity, cf. Hertz Corp. v. Friend, 130 S. Ct. 1181, 1185-86 (2010) ("we place primary weight upon the need for judicial administration of a jurisdictional statute to remain as simple as possible"); and unlike a rule based on the amount already paid or the balance still due, the face-value-of-the-loan approach cannot be manipulated through strategic timing of a filing. Cf. ConnectU LLC v. Zuckerberg, 522 F.3d 82, 93 (1st Cir. 2008) ("concerns about forum-shopping and strategic behavior" may "offer special justifications" for jurisdictional rules). So there is much to be said for such an approach.

However, the subject has not been briefed (or indeed even raised), so it is wiser to reserve the question of which test this circuit would approve; it is enough here that by any of the suggested tests the matter in controversy exceeds $75,000. This is readily demonstrated, particularly because for dismissal on amount-in-controversy grounds, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount," Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)

---

C10-01667, 2010 U.S. Dist. LEXIS 113821, at *16, 2010 WL 2629785, at *5-6 (N.D. Cal. June 29, 2010); and the "finance and other charges, earnest money, down payments, . . . [and] damages" that the plaintiffs would be entitled to recover if they succeeded in their suit, see Belini v. Wash. Mut. Bank, F.A., No. 03-30175, at 4 (D. Mass. Oct. 26, 2004), rev'd on other grounds, 412 F.3d 17 (1st Cir. 2005).

(quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).

Wells Fargo's disclosure statement listed the loan amount as $430,000 and the annual percentage rate as 8.269 percent, with monthly payments over a 30-year period, ending with a balloon payment of $251,430.05 due in December 2036. Thus, both the face value and the amount still due exceed the $75,000 threshold, as does the sum of the monthly payments already made ($3,030.25 a month over about a thirty-month period). Wells Fargo deemed the property to be adequate security for a $430,000 loan as of November 2006, making it highly likely that on removal, the property was worth at least $75,000.

Having settled the district court's jurisdiction, we next must confront the extent of our own appellate jurisdiction. In her notice of appeal, Suzette McKenna stated that she "hereby appeals . . . from the Order on Plaintiff's Motion for Reconsideration of this [District] Court's Memorandum of Order entered in this action on May 11, 2011" (underlining in original). But whereas the notice of appeal lists only the denial of the motion for reconsideration, McKenna's opening (and only) brief on appeal directly attacks only the district court's original Rule 12(b)(6) order.

The problem here has regularly bedeviled circuit courts and has not been consistently resolved. A notice of appeal from a final order of the district court must "designate the judgment,

order, or part thereof being appealed," Fed. R. App. P. 3(c)(1)(B); and, with certain exceptions, the notice must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). The Supreme Court deems these Rule 3 and 4 requirements to be "jurisdictional." Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988).

"Jurisdiction" is a term used multiple ways, but it is settled that a civil appeal filed out of time is barred, that the error in timing cannot be waived, and that circuit courts are expected to notice the error sua sponte if not raised by the opponent. Browder v. Dir., Ill. Dep't of Corr., 434 U.S. 257, 264 (1978). Thus, if Suzette McKenna had filed no reconsideration motion but waited 31 days before appealing from the original dismissal of her case, the appeal would be barred, and Suzette McKenna would be left only with a malpractice suit against her lawyer.

While McKenna's appeal was not filed within 30 days of the original March 21, 2011, dismissal, that time limit was suspended once she filed a motion for reconsideration under Rule 59(e) and 60(b) on April 12. See Fed. R. App. P. 4(a)(4)(A) (time to file an appeal does not begin to run until last order on a Rule 59 motion, provided that motion is timely filed, or last order on a Rule 60 motion, provided that motion is filed no later than 28 days after judgment is entered). And, after that motion for

-10-

reconsideration was denied (May 11, 2011), Suzette McKenna filed a timely notice of appeal (June 6, 2011), but one limited to the order on reconsideration, raising a prickly recurring problem.

Technically, an appeal that attacks only an order denying reconsideration can fairly be limited by the court solely to issues raised in the reconsideration motion; but so long as that order is timely appealed, courts have some latitude to consider other grounds originally urged against the underlying dismissal, especially where the issues on original dismissal and the reconsideration order overlap or are intertwined.[5] After all, Rules 3 and 4 govern the appeal of orders and not of issues, and it is debatable how far the "wrong order" objection is truly one of

---

[5]Compare, e.g., Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 209 (1st Cir. 2012) (court can consider 12(b)(6) order on appeal because review of the Rule 59(e) denial "will entail testing the cogency of the [12(b)(6) order]"), and Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 112 (1st Cir. 2007) (denial of reconsideration "inextricably intertwined with the correctness of the original order"), with Zukowski v. St. Lukes Home Care Program, 326 F.3d 278, 282 (1st Cir. 2003) ("appellant's notice of appeal seeks review of only the district court's denial of her motion for reconsideration . . . and our review is accordingly limited to the court's refusal to reopen the case"), and Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991) (attack on order dismissing complaint "not permitted" because "an appeal from the denial of a Rule 59(e) motion is not an appeal from the underlying judgment"). See also Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3 (1st Cir. 2002) ("courts faced with poorly drafted notices of appeal occasionally have been known to rescue the technically defaulted portion of an appeal," but "[w]e caution . . . that such rescue missions are not automatic, and litigants will do well to draft notices of appeal with care").

"jurisdiction." See 15A Wright & Miller, Federal Practice & Procedure § 3901 (Thomson Reuters 2012).

The need to provide finality argues strongly against court-made exceptions where no timely appeal is taken, Torres, 487 U.S. at 317 (rejecting any "good cause" exception to Rules 3 and 4), even though a court may be generous in finding that an appeal was timely, e.g., Scarpa v. Murphy, 782 F.2d 300, 301 (1st Cir. 1986) (citing "inexcusable neglect by the Post Office"). But a timely appeal, although limited to the denial of a Rule 59(e) motion, tells the appellee that the judgment is not final. Whether and when a court should go beyond the grounds raised is the more difficult question.

Even in our own circuit, "[t]he law on this issue is less clear than the cases claim it to be." Town of Norwood v. New Eng. Power Co., 202 F.3d 408, 415 (1st Cir.), cert. denied, 531 U.S. 818 (2000). See note 5, above. But we need not pursue the issue because full as opposed to limited review does not alter the outcome in this case. See Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 27 (1st Cir. 2012); cf. United States v. Fernández-Hernández, 652 F.3d 56, 73 (1st Cir.), cert. denied, 132 S. Ct. 353 (2011) ("Regardless of the standard of review, we find no error.").

Turning to the merits, the first, second, third and fourth counts of Suzette McKenna's complaint all state essentially

the same claim:  that Wells Fargo is no longer the holder of the note for Suzette McKenna's loan and therefore cannot foreclose on her home.[6]  This is a claim that has some force both in doctrine and policy; but it depends entirely on the law of Massachusetts which--in the absence of a federal claim or defense--governs the terms on which a mortgage can be foreclosed.  To understand the problem, some mortgage mechanics must be understood.

Typically, the borrower (mortgagor) grants to the lender (mortgagee) both a right to recover the outstanding balance evidenced by a promissory note and a security interest in the property, which is evidenced by a mortgage instrument. Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1124-25 (Mass. 2012); 4 Powell on Real Property § 37.27[2] (Matthew Bender & Co. 2012). Yet "[t]he holder of the mortgage and the holder of the note may be different persons," Lamson & Co. v. Abrams, 25 N.E.2d 374, 378 (Mass. 1940), because the note may be transferred after the mortgage is made. See generally Unif. Commercial Code §§ 3-103 to -104, 3-301 to -302 (on negotiability of promissory notes). Allowing a mortgagee who is not also a note holder to foreclose creates a risk that the borrower might remain liable to the true

---

[6]The counts respectively urge this straightforwardly; then as a standing objection; then phrased as an issue of the real party in interest; and finally by reference to the state statute on which Wells Fargo relies.  Each of these formulations simply contests the right of a mortgage holder who lacks the note to foreclose.

note holder even after the mortgagee had seized and sold the property.  See 4 Powell on Real Property § 37.33[3][b][i].

The common-law rule appears to have been that a mortgagee who was not also a note holder could only foreclose on mortgaged property if it were acting as the note holder's trustee.  Eaton, 969 N.E.2d at 1126 n.11 (discussing 19th and early 20th century case law).  However, the relevant Massachusetts foreclosure statute states that "[t]he mortgagee . . . or person acting in the name of such mortgagee . . . may, upon breach of condition and without action, do all the acts authorized or required by the power [of sale]."  Mass. Gen. Laws ch. 244, § 14 (emphasis added).

This language, which imposed no requirement that the mortgagee also hold and surrender the note, was sometimes read--as the district court did in this case--to allow foreclosure of Massachusetts mortgages by someone who held the mortgage but did not demonstrate ownership of the note.  E.g., Aliberti v. GMAC Mortg., LLC, 779 F. Supp. 2d 242, 249 (D. Mass. 2011); Valerio v. U.S. Bank, N.A., 716 F. Supp. 2d 124, 128-29 (D. Mass. 2010).  While Suzette McKenna's appeal was pending before us, the issue came before the Supreme Judicial Court of Massachusetts ("SJC"), and we held Suzette McKenna's case in abeyance.

On June 22, 2012, the SJC decided Eaton v. Federal National Mortgage Association, 969 N.E.2d 1118, which held that Massachusetts' foreclosure statutes should hereafter be construed

as Suzette McKenna urges, that is, to require the foreclosing mortgage holder to possess the note as well (or be acting as agent of the note holder, see id. at 1129-31); but, given concerns about past reliance on the statutory language and the possible impact on past title transfers, the SJC made its new rule applicable "only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion." Id. at 1133.

Eaton, of course, is binding upon us, including its decision to make the new mortgagor-protective rule apply only prospectively. See Wainwright v. Stone, 414 U.S. 21, 24 (1973) (federal courts bound by state high court's holding that construction of state statute will only be prospective). As Wells Fargo issued the mandatory notice of sale to Suzette McKenna on January 14, 2010, more than 30 months before the date of the decision in Eaton, the SJC's decision gives her no protection. Nor does Suzette McKenna claim that anyone else has sought to sue her on the note.

Suzette McKenna's fifth count asserts that she has a right to rescind her mortgage loan pursuant to the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D. Under section 10 of the MCCCDA, a borrower who mortgages her "principal dwelling" as part of a consumer credit transaction may rescind the transaction for up to three days. Mass. Gen. Laws ch. 140D, § 10(a). However, if the creditor does not provide the

-15-

borrower with the required information and rescission forms, then the right of rescission extends until the required documents are provided (although no longer than four years).  Id. § 10(f).

The MCCCDA regulations echo this statutory provision, describing the required documents as "all material disclosures"; 209 Mass. Code Regs. § 32.15(1)(c) (LexisNexis 2012); specifying that the creditor provide each borrower with two copies of a "notice of the right to rescind," id. § 32.15(2);  and  obligating the creditor to disclose, inter alia, the "finance charge" associated with the transaction, id. § 32.18.  Suzette McKenna alleges that Wells Fargo "did not provide the required amount of copies of the Notice to Cancel" and "underdisclosed the amount of the finance charge," allegedly giving rise to an extended right of rescission under Mass. Gen. Laws ch. 140D, § 10.

Suzette McKenna does not dispute that she received one copy of a document entitled "Notice of Right to Cancel" on November 9, 2006.  The district court stated that "as long as a borrower receives one such notice, the rescission period is not extended." McKenna, 2011 U.S. Dist. LEXIS 28719, at *8, 2011 WL 1100160, at *2.  The district court cited King v. Long Beach Mortgage Co., 672 F. Supp. 2d 238, 250-51 (D. Mass. 2009), where another district judge so construed the counterpart federal scheme, similar in substance to the Massachusetts rules, compare 12 C.F.R. § 226.23, with 209 Mass. Code Regs. § 32.15.

-16-

The Massachusetts rescission statute may not cleanly resolve the matter but it says nothing about the lack of multiple copies being a basis for rescission; the time period for rescission is only extended from three days to four years if the borrower does not receive an appropriate "written notice" (singular), Mass. Gen. Laws ch. 140D, § 10(h), (i)(1)(B); and the relevant regulations specify the conditions under which a borrower has an extended right of rescission, 209 Mass. Code Regs. § 32.15(1)(c)-(d), in a different subsection than the multiple-copy requirement, id. § 32.15(2).

If it were necessary to go beyond the language of the statutes and regulations, one might fairly point out that the purpose of the four-year extension is to give the consumer the information needed to decide intelligently whether to cancel; one copy performs this function as well as two, at least in a case where the McKennas never parted with their first copy of the form. Anyway, the more straightforward reading of the statute and regulations makes lack of notice, not the number of copies, the predicate for rescission.

Suzette McKenna's fifth count also asserts that Wells Fargo's TILA disclosure statement "underdisclosed the amount of the finance charge . . . by more than $35.00," that figure being the regulation's threshold to give rise to an extended right to rescind under Mass. Gen. Laws ch. 140D, § 10. See 209 Mass. Code Regs.

32.15(c). A letter attached to the complaint alleges that "the closing attorney overcharged us for title insurance."

The district court dismissed this claim on the grounds that "fees for title insurance are not finance charges" under the relevant regulations, McKenna, 2011 U.S. Dist. LEXIS 28719, at *8, 2011 WL 1100160, at *2, although it acknowledged in a footnote that fees for title insurance in a transaction secured by real property may qualify as finance charges if the fees are not "bona fide and reasonable in amount," id., 2011 U.S. Dist. LEXIS 28719, at *9-10 n.36, 2011 WL 1100160, at *2 n.36 (quoting 209 Mass. Code Regs. 32.04(3)(g)(1)).

However, to invoke this qualification, the complaint had to allege a factual basis for a claim that the bank's charges were not "bona fide" or were unreasonable. Cf. Guise v. BWM Mortg., LLC, 377 F.3d 795, 800 (7th Cir. 2004) (construing counterpart federal regulation); Brannam v. Huntington Mortg. Co., 287 F.3d 601, 606 (6th Cir.), cert. denied, 537 U.S. 1048 (2011) (same); McDermott v. Mortg. Elec. Registration Sys., No. 08-12121, 2010 U.S. Dist. LEXIS 104912, at *11-12, 2010 WL 3895460, at *4 (D. Mass. Sept. 30, 2010) (interpreting Massachusetts law).

Nothing in Suzette McKenna's complaint or attached to it provided any such factual basis for such a claim; the references to overcharge and the regulation's $35 figure are wholly conclusory; and dismissal on a 12(b)(6) motion is appropriate where "statements

in the complaint . . . merely offer legal conclusions couched as facts or are threadbare or conclusory."[7] This reflects the Supreme Court's insistence, see Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), on more than conclusory allegations or rote repetition of statutory language before further costs and discovery burdens are imposed on the parties.

Here, on motion for reconsideration, Suzette McKenna by affidavit furnished information suggesting that the lawyer who represented Wells Fargo in the loan refinancing "charged $712.00 [for title insurance] rather than the base policy rate of $667.00" and that the latter was a "typical" rate for title insurance on a $430,000 loan. This is effectively an attempted amendment to the complaint, which must be done within 21 days of a motion to dismiss unless the opposing party consents to a later amendment or the court grants leave, see Fed. R. Civ. P. 15(a), and here, the attempt was too late by more than six months.

The denial of an attempt to bolster a complaint by motion for reconsideration after dismissal is tested for abuse of discretion, Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009), and it is not an abuse to refuse to consider factual allegations in

---

[7]Air Sunshine, Inc. v. Carl,, 33 (1st Cir. 2011) (quoting Soto-Torres v. Fraticelli, 654 F.3d 153 (1st Cir. 2011)); accord Pruell v. Christi, 678 F.3d 10, 13 (1st Cir. 2012) (dismissal on 12(b)(6) motion appropriate where "language [in the complaint] is little more than a paraphrase of the statute").

a Rule 59(e) motion "that could and should have been presented to the district court prior to the judgment." <u>Aybar</u> v. <u>Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997), <u>cert. denied</u>, 522 U.S. 1078 (1998) (quoting <u>Moro</u> v. <u>Shell Oil Co.</u>, 91 F.3d 872, 876 (7th Cir. 1996)). Moreover, even if the affidavit were part of the complaint, it does not show that the charge was unreasonable or not bona fide.[8]

The sixth count of Suzette McKenna's amended complaint alleges that Wells Fargo has engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2(a), which creates a private right of action against violators, <u>id.</u> § 11. The claimed wrongful conduct comprises the failure to provide the second rescission notice, the lawyer's alleged overcharge for title insurance, other claims that assume that the foreclosure was unlawful, and a largely unexplained but unpromising final act, to wit, that "Wells Fargo forced Plaintiff to unnecessarily open probate, as a condition precedent

---

[8]Suzette McKenna attaches to her motion for reconsideration a print-out from the Fidelity National Title Insurance Co.'s website indicating that the "typical" title insurance premium for a $430,000 mortgage loan in Barnstable County, Massachusetts, was $667 as of April 5, 2011. (The McKennas were charged $712 for title insurance.) Not only are there countless "bona fide" reasons why a title insurance premium might vary from the "typical" rate by at least $45, but the print-out reflects rates for transactions occurring four-and-a-half years after the McKennas' mortgage loan, and Suzette McKenna gives us no reason to conclude that the "typical" rate at the later date also applied at the time of the transaction.

before entertain [sic] discussions, further increasing burdens and costs upon Plaintiff."

The Massachusetts unfair trade practices statute also requires plaintiffs to submit a demand letter to defendants 30 days prior to filing a private action under chapter 93A, id. § 9(3), which Suzette McKenna did not do. The demand letter requirement "is not merely a procedural nicety, but, rather, 'a prerequisite to suit,'" Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)), designed "to encourage negotiation and settlement" and "as a control on the amount of damages." Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 779 (Mass. 1975).

The district judge dismissed the count for lack of a demand letter, McKenna, 2011 U.S. Dist. LEXIS 28719, at *11-12, 2011 WL 1100160, at *3. Suzette McKenna now claims that no demand letter was required because (she says) a violation of the Massachusetts Consumer Credit Cost Disclosure Act is a per se violation of chapter 93A, see Mass. Gen Law ch. 140D, § 34. But the purposes of the demand letter requirement would be served whether the violation was easily proved or not, and no such exception for "per se" violations is supported by Massachusetts law.

The demand letter requirement does not apply "if the claim is asserted by way of counterclaim or cross-claim, or if the

-21-

prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." Mass. Gen Laws ch. 93A, § 9(3). In addition to her contention regarding per se violations, Suzette McKenna argues that the demand letter requirement does not apply here because she is "asserting her claims defensively against a foreclosure action" and because Wells Fargo "does not maintain a place of business and/or keep assets within the Commonwealth."

No counterclaim or cross-claim is involved in this case, and the purposes of the demand letter requirement are implicated by the relief McKenna seeks in her complaint, in particular the claim for damages. And Wells Fargo clearly keep assets within Massachusetts, one of those assets being a real property interest in the home where Suzette McKenna resided. See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 51 (Mass. 2011) (under Massachusetts law, mortgagee holds legal title to mortgaged property); see also Wells Fargo Bank NA v. Premier Capital, LLC, 81 Mass. App. Ct. 1110 (Mass. App. Ct. 2012) (case involving Wells Fargo real property interest in Centerville, Massachusetts).

Suzette McKenna's seventh and final count alleges intentional misrepresentation on the part of Wells Fargo. Under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud--"and for this purpose, misrepresentation is considered a species of fraud," see Alternative Sys. Concepts, Inc. v. Synopsys,

<u>Inc.</u>, 374 F.3d 23, 29 (1st Cir. 2004)--must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); <u>see also</u> <u>Universal Commc'n Sys., Inc.</u> v. <u>Lycos, Inc.</u>, 478 F.3d 413, 427 (1st Cir. 2007).

Here, Suzette McKenna's complaint alleges that Wells Fargo's misrepresentations included, "without limitation," "[m]aking preliminary oral and written disclosures pertaining to the settlement charges of the loan" and "[p]roviding a loan that was not what [Wells Fargo] purported it to be, which contained an overall higher interest rate than what was 'disclosed' to Plaintiff." The complaint fails to specify the time or place of these misrepresentations or their real content and, as the district court held, these assertions are "too vague to meet the particularity requirement of Rule 9." <u>McKenna</u>, 2011 U.S. Dist. LEXIS 28719, at *13, 2011 WL 1100160, at *3.

<u>Affirmed</u>.