**Angela RICE f/k/a Angela Pina and Daniel Rice, Plaintiffs,**

v.

**WELLS FARGO BANK, N.A., s/b/m Wachovia Mortgage, F.S.B., f/k/a World Savings Bank, F.S.B., Defendant.**

Civil Action No. 13–11775–JLT.

United States District Court, D. Massachusetts.

Signed March 5, 2014.

Glenn F. Russell, Jr., Law Office of Glenn F. Russell Jr., Fall River, MA, for Plaintiffs.

David M. Bizar, Seyfarth Shaw, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiffs Angela and Daniel Rice bring this suit against Defendant Wells Fargo asserting claims based on its handling of their home loan and attempts to foreclose on their property. At this stage, Plaintiffs primarily seek to prevent Defendant from foreclosing on their home. Defendant seeks dismissal of the majority Plaintiffs' claims.

### II. *Background*

#### A. *Facts* [1]

Plaintiffs reside at 247 Bramblebrush Road, Stoughton, MA in Norfolk County (the "Bramblebrush Property").[2] On May 7, 1999, Plaintiffs entered a mortgage loan transaction with World Savings Bank, F.S.B. ("World Savings").[3] They executed a promissory note payable to World Savings in the amount of $275,576.[4] Plaintiffs simultaneously granted World Savings a mortgage in the Bramblebrush Property as security for the loan.[5] During approximately the first nine months of 1999, the period in which Plaintiffs' mortgage was originated, World Savings was in the business of regularly securitizing and divesting ownership of the mortgages it originated.[6]

■ Effective December 31, 2007, World Savings changed its name to Wachovia Mortgage, F.S.B. Then, effective November 1, 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A. and merged with and into Wells Fargo Bank, N.A. Accordingly, Defendant is the successor by merger to World Savings and its assets.[7] There is no recorded assignment of Plaintiffs' mortgage from World Savings to anyone else in the Norfolk County registry of deeds.[8] "World Savings Bank, F.S.B." remains the mortgagee of record.[9] Plaintiffs claim that Defendant did not purchase the right to enforce their note or mortgage when it acquired World Savings because World Savings had already divested itself of ownership of the note and mortgage.[10]

Plaintiffs' mortgage loan was originated by World Savings as a Cost of Savings Index Adjustable Rate Mortgage ("COSI

---

1. Because the issues analyzed here arise primarily in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Complaint, *see Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir.2008), and construes those facts in the light most favorable to Plaintiff, *see Pettengill v. Curtis*, 584 F.Supp.2d 348, 362 (D.Mass.2008).

2. Compl. ¶ 1. The Complaint is pages 36 to 52 of the State Court Record [# 8].

3. Compl. ¶ 4.

4. Compl. ¶ 4.

5. Compl. ¶ 5.

6. Compl. ¶ 17.

7. Numerous courts have taken judicial notice of World Savings' progression to Wells Fargo. *See, e.g., Viets v. Wachovia Mortg., FSB*, No. 2:11–CV–00169–GMN–RJJ, 2011 WL 6181934, at *4 n. 1 (D.Nev. Dec. 12, 2011); *Logvinov v. Wells Fargo Bank*, No. C–11–04772 DM R, 2011 WL 6140995, at *1 n. 2 (N.D.Cal. Dec. 9, 2011). This series of transactions is not subject to reasonable dispute and this court takes judicial notice of the progression of World Savings to Wells Fargo.

8. Compl. ¶ 8.

9. Compl. ¶ 8.

10. Compl. ¶ 28.

ARM").[11] The cost of savings index ("COSI") was an index of interest rates used by World Savings to determine interest rate adjustments on Plaintiffs' loan.[12] World Savings used the Golden West Cost of Savings Index ("GDW COSI") to calculate Plaintiffs' interest payments. The index was based upon the "weighted average of all deposit accounts of GDW's retail banking subsidiaries."[13] In short, the index factored savings and other accounts into the interest rate, and such accounts generally have lower interest rates than certificates of deposit.[14]

Plaintiffs' promissory note describes the use of the GDW COSI. The note states that the lender can choose to use a different index if the GDW COSI is no longer available.[15] "No longer available" is defined to mean several things, including: (1) the GDW COSI is no longer publicly disseminated, or (2) the lender determines in its sole discretion that the GDW COSI was being calculated in a substantially different manner or based on substantially different information than at the time the loan was originated.[16] In selecting an alternate interest rate index, the note states that it may be a national or regional index, or other type of index approved by the lender's primary regulator.[17]

When Wachovia acquired World Savings, it began using its own COSI to calculate Plaintiffs' interest payments.[18] The Wachovia COSI was based solely on certificate of deposit interest rates.[19] When Defendant acquired Wachovia's assets, it used a COSI similar to the one Wachovia had been using.[20] The indexes used by Wachovia and Defendant are not national or regional indexes and are not otherwise approved by the Office of the Comptroller of Currency (the bank's primary regulator), and their use therefore constitutes a material breach of the terms of the promissory note.[21]

Based on the foregoing, Plaintiffs assert the following claims: (1) multiple counts seeking declaratory judgment under several related theories that Defendant is not a real party in interest and lacks standing to foreclose on their home; (2) violation of Massachusetts General Laws chapter 93A; (3) breach of contract; and (4) slander of title.

### B. *Procedural History*

On January 10, 2013, Defendant filed in Massachusetts Land Court a complaint to foreclose on Plaintiffs' mortgage pursuant to the Servicemembers Civil Relief Act.[22] On February 22, 2013, Jorge Salamanca filed an affidavit on Defendant's behalf with the Norfolk County registry of deeds.[23] The affidavit states that Defendant is the holder of Plaintiffs' note and that Defendant was not acting as an agent

---

11. Compl. ¶ 42.

12. Compl. ¶ 44.

13. Compl. ¶ 46.

14. Compl. ¶¶ 47–49, 52.

15. Compl. ¶ 50.

16. Compl. ¶ 50.

17. Compl. ¶ 50.

18. Compl. ¶ 51.

19. Compl. ¶ 52.

20. Compl. ¶ 54.

21. Compl. ¶¶ 55–67.

22. Aff. William Lugo Supp. Def.'s Opp'n Pls.' Mot. Prelim. Inj. [# 24] [hereinafter Lugo Aff.] Ex. B.

23. Compl. ¶ 9.

for some other note holder.[24] On February 25, 2013, Defendant filed in the Land Court action a motion for judgment and an affidavit stating that Plaintiffs were not military service members.[25] The motion for judgment was allowed on February 26, 2013.[26] Judgment entered on the complaint to foreclose on May 7, 2013.[27]

On May 17, 2013, Defendant sent Plaintiffs notice that the Bramblebrush Property would be auctioned on June 14, 2013.[28] Defendant subsequently postponed the foreclosure sale.[29] On July 12, Plaintiffs filed their *Complaint* and *Motion for Preliminary Injunction* in Norfolk Superior Court. The Superior Court granted the preliminary injunction motion ex parte on July 18. The injunction was to expire on August 6. On July 25, Defendant removed the case to this court. Plaintiffs renewed their *Motion for Preliminary Injunction* [# 10] in this court. On August 27, the Parties filed a *Joint Motion to Enter a Briefing Schedule* [# 13], which this court allowed. The Parties agreed that the Superior Court's injunction would remain in effect until this court decided the renewed motion for preliminary injunction.[30]

Defendant filed its opposition to the renewed motion for preliminary injunction on November 21. Defendant simultaneously filed its *Motion to Dismiss* [# 25]. The motion seeks to dismiss all claims against Defendant except Plaintiffs' breach of contract claim. On December 4, Plaintiffs filed their opposition to Defendant's motion to dismiss, as well as two motions to strike affidavits Defendant submitted in

support of its opposition to the motion for preliminary injunction. On December 18, Defendant filed oppositions to both motions to strike. This court held a hearing on all of the outstanding motions on February 26, 2014 and the motions are now ripe for disposition.

## III. *Discussion*

### A. *The Motions to Strike*

Plaintiffs move to strike two affidavits Defendant filed in connection with its opposition to Plaintiffs' motion for preliminary injunction. Plaintiffs raise a number of general and specific objections to each of the affidavits. This court will briefly address the motions to strike before turning to the motion for preliminary injunction and the motion to dismiss.

#### 1. *Michael Dolan's Affidavit*

One of the challenged affidavits was made by Michael Dolan. Dolan states that he is employed by Defendant as a "Research and Mediation Manager" and as an operations analyst. He further states that he has been employed by Defendant, Wachovia, or World Savings since 1984 and has served in a number of positions. As part of his job, Dolan states that he has access to extensive information, including Defendant's "loan files and communications logs and records." [31] Dolan further states that he bases his testimony on his "personal knowledge of Wells Fargo's operations and records as described above or

24. Compl. ¶ 9.

25. Lugo Aff. [# 24] Ex. B.

26. Lugo Aff. [# 24] Ex. B.

27. Lugo Aff. [# 24] Ex. E.

28. Compl. ¶ 10.

29. Compl. ¶ 11.

30. Joint Mot. Enter Briefing Schedule Pls.' Mot. Prelim. Inj. [# 13] ¶ 7.

31. Aff. Michael Dolan Supp. Def.'s Opp'n Pls.' Mot. Prelim. Inj. [# 23] [hereinafter Dolan Aff.] ¶ 2.

below." [32]

Dolan provides background information on the origination of the loan and World Savings' eventual merger into Wells Fargo. He also discusses efforts that Defendant took to notify Plaintiffs they were in default. Additionally, Dolan provides information on Plaintiffs' outstanding loan balance and information concerning payments they missed. Finally, and most relevant to the motion for preliminary injunction, Dolan states that "[a]s of this date, Wells Fargo is still the holder of the Promissory Note and has in its possession the Original Promissory Note." [33]

█ Plaintiffs raise a number of objections to the affidavit. Generally speaking, each of Plaintiffs' objections relates to Dolan lacking personal knowledge of the subject matter of his testimony or the contents of the various documents submitted in support of his affidavit. In short, Plaintiffs take issue with the fact that Dolan does not state that he is intimately familiar with Plaintiffs' mortgage or loan file and contend that his statements are hearsay.

█ As Defendant points out, however, this court has broad discretion in deciding what evidence to consider in connection with a motion for preliminary injunction, including hearsay. [34] Even if portions of Dolan's statements are hearsay, this court may still consider them in deciding whether Plaintiffs are entitled to a preliminary injunction. Furthermore, Plaintiffs' contention that Dolan lacks personal knowledge of their loan file and other documents is without merit. Dolan expressly states, under penalty of perjury, that: (1) all of his testimony is based on his personal knowledge of Defendant's operations and records and (2) he has access to Defendant's loan files. Furthermore, Dolan's affidavit includes copies of Plaintiffs' original note and mortgage, as well as other documents, indicating that he has read them. For these reasons, Plaintiffs' motion to strike Dolan's affidavit is DENIED.

### 2. *Jorge Salamanca's Affidavit*

Jorge Salamanca's affidavit was originally filed in the Norfolk County registry of deeds on February 22, 2013. [35] Salamanca's affidavit is attached as an exhibit to Dolan's affidavit. [36] The affidavit states that: (1) Salamanca is an officer of Defendant; (2) based on his review of Defendant's records, Massachusetts General Laws chapter 244, section 35B does not apply to Plaintiffs' mortgage; and (3) Defendant is the holder of the promissory note secured by the mortgage. [37]

█ Plaintiffs object to the introduction of this affidavit on many of the same grounds. They argue that Salamanca fails to establish personal knowledge of the fact that Defendant is the holder of the note and his affidavit is hearsay. Plaintiffs' arguments are again without merit. First, as noted above, this court can consider the

---

32. Dolan Aff. [# 23] ¶ 2.

33. Dolan Aff. [# 23] ¶ 11.

34. *Asseo v. Pan Am. Grain Co.,* 805 F.2d 23, 26 (1st Cir.1986); *see also, e.g., Mullins v. City of New York,* 626 F.3d 47, 52 (2nd Cir.2010) ("[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction. The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the prelimi-

nary injunction stage."); *Sierra Club, Lone Star Chapter v. FDIC,* 992 F.2d 545, 551 (5th Cir.1993) (stating that a "district court may rely on otherwise inadmissible evidence, including hearsay" in deciding a motion for preliminary injunction).

35. Compl. ¶ 9.

36. Dolan Aff. [# 23] Ex. G.

37. Dolan Aff. [# 23] Ex. G.

affidavit in connection with the motion for preliminary injunction regardless of whether it constitutes hearsay.

Second, the affidavit is admissible evidence pursuant to Federal Rule of Evidence 803(15). Pursuant to this rule, "[a] statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose" is not hearsay.[38] Massachusetts General Laws chapter 244, section 35B requires a creditor to undertake various steps to "avoid foreclosure" with respect to certain types of mortgages defined by statute.[39] Section 35B(f) states that "[p]rior to publishing a notice of a foreclosure sale," an officer of the creditor "shall certify compliance with this section in an affidavit based upon a review of the creditor's business records. The creditor, or an officer or duly authorized agent of the creditor, shall record this affidavit with the registry of deeds for the county or district where the land lies."[40] Here, Salamanca's affidavit purports to affect an interest in property and the statements are relevant to the statutory purpose of the affidavit. Ultimately, the affidavit was filed in compliance with state law, Plaintiffs refer to the affidavit in their Complaint, and this court may consider it in connection with the motion for preliminary injunction. Accordingly, Plaintiffs' motion to strike Salamanca's affidavit is DENIED.

### B. *The Motion for Preliminary Injunction*

Plaintiffs move this court to enjoin Defendant from foreclosing on the Bramblebrush Property until such time as the underlying complaint can be heard on the merits. Although Plaintiffs raise a number of claims against Defendant, their motion for preliminary injunction relies only on Counts I to III, which seek declaratory judgment that Defendant lacks standing to foreclose on their home.[41] As discussed below, Counts I through III fail to state plausible claims and are subject to dismissal. For the sake of thoroughness, this court will address Plaintiffs' argument that it should enter a preliminary injunction.

▮ Preliminary injunctions are not issued on a whim. The movant bears the burden to prove that he has a "substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed."[42] A movant's failure to establish a likelihood of success on the merits is a sufficient reason to deny a motion for preliminary injunction.[43]

Plaintiffs offer a number of arguments in support of their claims for declaratory judgment that Defendant lacks standing to foreclose on the Bramblebrush Property.[44] These arguments will be described in greater detail in connection with Defendant's motion to dismiss. Ultimately, however, the arguments all boil down to the

---

**38.** Fed.R.Evid. 803(15).

**39.** Mass. Gen. Laws ch. 244, § 35B.

**40.** *Id.* § 35B(f).

**41.** *See* Mem. Law Supp. Mot. Prelim. Inj. [# 11], at 12–13 (discussing Defendant's lack of standing in connection with their likelihood of success on the merits).

**42.** *Fryzel v. Mortg. Elec. Registration Sys., Inc.,* 719 F.3d 40, 44 (1st Cir.2013).

**43.** *See Baer v. Nat'l Bd. of Med. Exam'rs,* 392 F.Supp.2d 42, 48 (D.Mass.2005).

**44.** *See* Mem. Law Supp. Mot. Prelim. Inj. [# 11], at 2.

same contention: that *Defendant* has not produced sufficient evidence that it is the owner of Plaintiffs' promissory note and/or mortgage.

 Massachusetts is a non-judicial foreclosure state and a mortgage holder need not obtain judicial authorization to foreclose on mortgaged property.[45] If a mortgagor grants the mortgage holder the power of sale in the mortgage, the power of sale set forth in Massachusetts General Laws chapter 183, section 21 is included by reference.[46] Massachusetts courts therefore require a mortgage holder to strictly comply with the terms of the power of sale in order to avoid having the sale rendered void.[47] Massachusetts law restricts the class of persons who may exercise the statutory power of sale to "the mortgagee or his executors, administrators, successors or assigns."[48] And, under Massachusetts law, "mortgagee" means "the person or entity [ ] holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder" at the time the power of sale is exercised.[49] Accordingly, a foreclosure sale will be deemed void when the foreclosing entity does not possess both the mortgage and note, unless it is acting on behalf of the note holder.

Plaintiffs argue that the Supreme Judicial Court's decision in *Eaton v. Federal National Mortgage Association,* in addition to clarifying the definition of "mortgagee," requires a party seeking to foreclose to "provide evidence" that it possesses the mortgagor's promissory note.[50] Plaintiffs rely heavily on footnote 28 of the opinion, which states in relevant part that "a foreclosing mortgage holder [ ] *may* establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds pursuant to G.L. c. 183, § 5B."[51] But neither *Eaton* nor *U.S. Bank, N.A. v. Ibanez* (the other upon which case Plaintiffs rely heavily) require a mortgage holder to produce evidence of ownership before it can foreclose. Indeed, it would have been odd for them to have done so. As noted above, Massachusetts law allows a creditor to foreclose without initiating judicial proceedings. Although *Eaton* and *Ibanez* state that a foreclosure sale will be deemed void if the foreclosing entity does not satisfy the statutory definition of "mortgagee,"[52] both decisions expressly state that a creditor may exercise the power of sale without going to court and do not require the foreclosing entity to present evidence to anyone before doing so.[53] Finally, footnote 28 of *Eaton* does not require a mortgage holder to file a section 5B affidavit in order to prove that it holds the note or acts on behalf of the note holder. It merely states that such an affidavit is one way to do so in the event that there is some question as to the note holder's identity.

---

45. *U.S. Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40, 49 (2011).

46. *See id.*

47. *Id.* at 49–50.

48. Mass. Gen. Laws ch. 183, § 21.

49. *Eaton v. Fed. Nat'l Mortg. Ass'n,* 462 Mass. 569, 969 N.E.2d 1118, 1121 (2012).

50. *See* Mem. Law Supp. Mot. Prelim. Inj. [# 11], at 9.

51. *Eaton,* 969 N.E.2d at 1133 n. 28 (emphasis added).

52. *Id.* at 1123, 1128; *Ibanez,* 941 N.E.2d at 50–51.

53. *Eaton,* 969 N.E.2d at 1127; *Ibanez,* 941 N.E.2d at 49.

■ With the foregoing discussion in mind, Plaintiffs' motion for preliminary injunction is easily dispensed with. Plaintiffs argue that they have a likelihood of success simply because Defendant has not produced sufficient evidence that it owns their mortgage or note. But this gets things backward. It is not Defendant who must present evidence of its ownership of the note in order to avoid entry of an injunction. Instead, it is Plaintiffs who must prove that they are entitled to an injunction.[54] Plaintiffs fail to establish that they have a substantial likelihood of proving that Defendant does not hold their mortgage or note. The Complaint merely alleges that at the time World Savings originated Plaintiffs' mortgage, it was in the business of securitizing a significant portion of its mortgages and divesting its ownership of them.[55] From this single fact, Plaintiffs conclude that their mortgage and note were not among the assets owned by World Savings by the time it was acquired by Defendant and Defendant therefore is not a "mortgagee" that can exercise the statutory power of sale.[56] This is far too insubstantial a showing to

entitle Plaintiffs to a preliminary injunction. Because Plaintiffs fail to show a substantial likelihood of success on the merits, their motion for preliminary injunction is DENIED.

### C. *The Motion to Dismiss*

A complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' "[57] In considering a motion to dismiss, a court takes "all factual allegations as true and [draws] all *reasonable* inferences in favor of the plaintiff."[58] Nevertheless, a complaint is insufficient when it offers " 'naked assertion[s]' devoid of 'further factual enhancement.' "[59] In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[60] A plausible claim is one that states "more than a sheer possibility" that the defendant acted unlawfully.[61] Stating facts that are " 'merely consistent with' a defendant's liability [ ] 'stops short of the line between possibility and plausibili-

---

**54.** *See Eaton,* 969 N.E.2d at 1123 ("[The motion judge] concluded that because Green Tree, the assignee of the mortgage, had stipulated that it did not hold the mortgage note executed by Eaton when the sale took place, Eaton [ (the movant) ] *was likely to succeed in proving* that the foreclosure sale was void and that the defendants had no authority to evict her and take possession of her home." (emphasis added)); *cf. Jepson v. HSBC Bank USA, N.A.,* No. 12–12179–LTS, 2013 WL 639184, at *5 (D.Mass. Feb. 20, 2013) (holding that under Massachusetts law a mortgage holder "is under no obligation to offer such proof or 'provide[ ] any evidentiary foundation, under proper evidentiary rules' to show it holds the mortgage" and the mortgagor "may not circumvent state law and impose such a requirement by initiating judicial proceedings on their own").

**55.** *See* Compl. ¶¶ 17, 23.

**56.** Compl. ¶ 25.

**57.** *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**58.** *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 96 (1st Cir.2007).

**59.** *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (explaining that a district court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like").

**60.** *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

**61.** *Id.*

ty.' " [62] In addition to the complaint, a court may consider matters "fairly incorporated within the complaint and matters susceptible of judicial notice." [63] With this standard in mind, this court turns to Defendant's motion to dismiss the majority of the claims against it.

### 1. Whether Defendant Has Standing to Foreclose on the Property

Counts I through III all contend that Plaintiffs are entitled to a declaratory judgment that Defendant lacks legal standing to foreclose on the Bramblebrush Property, though they raise different arguments to that end.[64] This court will address each in turn.

### a. Whether Defendant Has Standing to Enforce the Mortgage

Count I asserts that Defendant lacks standing to enforce Plaintiffs' mortgage because: (1) "Defendant has not provided any documentary evidentiary indicia ... that indicates that the specific Plaintiffs' loan at issue ... was ever specifically acquired by" Defendant; [65] (2) there is no recorded assignment of Plaintiffs' mortgage at the Norfolk County registry of deeds; [66] and (3) World Savings was in the business of securitizing many of its mortgages at the time it originated Plaintiffs' loan.[67] Plaintiff concludes that Defendant must affirmatively prove either that Plaintiffs' mortgage was assigned to it or that World Savings held the mortgage when it merged with Defendant and that it has done neither.

Count I is without merit. First, as with the motion for preliminary injunction, De-

fendant is not required to affirmatively prove that it owns Plaintiff's mortgage. To avoid dismissal, it is Plaintiffs who must allege sufficient facts to plausibly state a claim that Defendant *does not* own their mortgage. The fact that Defendant has not provided any evidence at this point thus does not satisfy Plaintiffs' burden to state a plausible claim.

Second, the fact that there is no recorded assignment of Plaintiffs' mortgage is inapposite. As discussed above, Defendant is the successor by merger to World Savings. Under federal law, Defendant automatically acquired all World Savings' assets at the time of merger. Pursuant to 12 U.S.C. § 215a, when a National Bank, such as Defendant, merges with another banking entity, the "receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger." [68] As a result, "all rights, franchises, and interests ... in and to every type of property ... shall be transferred to and vested in the receiving association ... without any deed or other transfer." [69] No court order or other legal action is required. Accordingly, Defendant automatically acquired ownership of Plaintiffs' mortgage at the time of the merger, so long as World Savings owned it at that time. The lack of any recorded assignment actually undermines Plaintiffs' claim to the extent that it suggests the mortgage was not transferred to anyone other than Defendant.

This leaves Plaintiffs' assertion that World Savings did not own their mortgage

---

62. *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

63. *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.,* 547 F.3d 48, 51 (1st Cir.2008).

64. *See* Compl. at 10–14.

65. Compl. ¶ 71.

66. Compl. ¶ 76.

67. Compl. ¶ 72.

68. 12 U.S.C. § 215a(e).

69. *Id.*

at the time of the merger. Although Plaintiffs perhaps come closer to stating a plausible claim than to showing a substantial likelihood of success, they still fall short. Plaintiffs merely allege that World Savings bank was in the business of selling many of its mortgages in 1999 and from that single fact leap to the conclusion that Defendant could not have acquired it in the merger because it must have been sold. This court is not bound to credit this conclusion with no other factual assertions to support it. While the fact that World Savings sold many of its mortgages shows that it is *possible* that Defendant did not acquire their mortgage, it does not state a *plausible* claim. Count I is therefore dismissed.

### b. *Whether Defendant Has Standing to Enforce the Note*

 Count II contends that Defendant lacks standing to enforce Plaintiffs' promissory note because: (1) Defendant must physically produce the note and has not;[70] (2) *Eaton* requires a mortgage holder to provide evidence that it owns the note and Defendant has not;[71] and (3) the Salamanca affidavit does not comply with Massachusetts General Laws chapter 183, section 5B and is not admissible evidence.[72] Count II lacks merit for many of the reasons already discussed. First, Plaintiff cites no authority requiring a mortgage holder to physically produce the note prior to initiating a foreclosure. As explained, while Massachusetts law requires a mortgagee to possess the note in order to avoid having a foreclosure sale rendered void, it does not require the mortgagee to initiate judicial proceedings or produce the note before doing so. Further, as discussed in connection with the motion for preliminary injunction, *Eaton* does not require a mortgage holder to provide evidence that it owns the note prior to foreclosing on a home.

Finally, Plaintiffs' arguments regarding the Salamanca affidavit's non-compliance with section 5B are premised on the theory that *Eaton* requires such an affidavit to be filed prior to foreclosure. Because *Eaton* does not mandate that such an affidavit be filed or that a mortgage holder prove its right to foreclose, it is irrelevant whether the Salamanca affidavit complies with section 5B or constitutes admissible evidence. Plaintiffs allege no other facts plausibly showing that Defendant is not the owner of their promissory note. Count II is therefore dismissed.

For the reasons set forth above, Count III is also dismissed. Count III seeks declaratory judgment that Defendant lacks standing to enforce the power of sale in Plaintiffs' mortgage and simply states that a finding for Plaintiffs on Counts I or II necessarily means Defendant lacks standing to exercise the power of sale. Because Counts I and II are subject to dismissal, Count III necessarily fails as well.[73]

### 2. *The Chapter 93A Claim*

 Count IV asserts a claim for violation of chapter 93A based on Defendant's breach of the terms of the mortgage loan contract. A plaintiff wishing to assert a claim for violation of chapter 93A must submit to the defendant a demand letter thirty days before filing suit.[74] This demand-letter requirement "is not merely a procedural nicety, but, rather, a prerequi-

---

70. Compl. ¶ 84.

71. Compl. ¶¶ 86–89.

72. Compl. ¶¶ 90–92, 95–96.

73. *See* Compl. ¶¶ 98–99.

74. Mass. Gen. Laws ch. 93A, § 9(3).

site to suit." [75] Plaintiffs concede that they did not send Defendant a demand letter.

Nevertheless, Plaintiffs contend that there are two exceptions to the demand-letter requirement applicable to this case. One exception applies where the claimant asserts a chapter 93A claim by way of counterclaim or cross claim.[76] Plaintiffs are not asserting their claim by way of counterclaim or cross claim. Despite this, they argue that the exception is satisfied because they are asserting the claim defensively in reaction to a pending foreclosure. This reasoning has been rejected by the First Circuit [77] and warrants no further discussion.

■ A plaintiff is also exempt from the demand-letter requirement if the defendant "does not maintain a place of business or does not keep assets" within Massachusetts.[78] Plaintiffs contend that Wells Fargo does not keep assets within Massachusetts and therefore they need not have sent a demand letter. The First Circuit has held, however, that owning a mortgage in property within Massachusetts is sufficient to trigger the demand-letter requirement.[79] In a final attempt to salvage this claim, Plaintiffs point to *Butler v. Deutsche Bank Trust Co. Americas*,[80] a district court opinion. *Butler* held that holding a mortgage without the accompanying note does not constitute an "asset" for purposes

of chapter 93A.[81] Regardless of whether *Butler* was correctly decided, its holding does not save *this* chapter 93A claim. As discussed in connection with Counts I and II, Plaintiffs have failed to state plausible claims that Defendant does not possess either their mortgage or note. Accordingly, they necessarily fail to state that Defendant does not keep at least one asset within the Commonwealth and Count IV is dismissed for failure to submit a demand letter.

### 3. The Slander of Title Claim

Finally, Count VI claims that Defendant slandered the title to Plaintiffs' property by causing "a false publication to be publically recorded at the Norfolk County Registry of Deed [sic] that purports to state that Defendant currently has *absolute ownership* of the title to Plaintiff's [sic] residence." [82] Plaintiffs also claim that the Salamanca affidavit contained a false statement.[83]

■ Under Massachusetts law, "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to the interests of the other having a pecuniary value, or either recognizes

---

**75.** *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 218 (1st Cir.2012) (internal quotation marks and citations omitted).

**76.** Mass. Gen. Laws ch. 93A, § 9(3).

**77.** *McKenna*, 693 F.3d at 218; *see also Lindsay v. Wells Fargo Bank, N.A.*, No. 12–11714–PBS, 2013 WL 5010977, at *16 (D.Mass. Sept. 11, 2013).

**78.** Mass. Gen. Laws ch. 93A, § 9(3).

**79.** *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 359 (1st Cir.2013); *McKenna*, 693 F.3d at 218.

**80.** No. 12–10337–DPW, 2012 WL 3518560 (D.Mass. Aug. 14, 2012).

**81.** *Id.* at *13. *But see id.* at *13 n. 12 (clarifying that holding a note and mortgage in combination creates an asset and triggers the demand-letter requirement).

**82.** Compl. ¶ 121 (emphasis added).

**83.** Compl. ¶ 122.

or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." [84]

Count VI fails to state a claim because there are no plausible factual allegations that Defendant published a false statement. Ultimately, this count turns on Plaintiffs' arguments in Counts I through III that Defendant lacks legal standing to foreclose on their home because it does not own their mortgage or note. As already discussed at length, those claims fail because Plaintiffs have not plausibly alleged that Defendant is not the owner of the note or mortgage. Accordingly, Plaintiffs have also failed to state facts to support their contention that the Salamanca affidavit contained a false statement when it stated that Defendant is the holder of Plaintiffs' promissory note. Nor did the Salamanca affidavit purport to state that Defendant has absolute ownership of the Bramblebrush Property.[85] For these reasons, Count VI is dismissed.

### IV. *Conclusion*

For the foregoing reasons, Plaintiffs' *Motion to Strike the Affidavit of Michael Dolan* [# 28] and *Motion to Strike the Affidavit of Jorge Salamanca* [# 29] are DENIED. Additionally, Plaintiffs' *Motion for Preliminary Injunction* [# 10] is DENIED. Defendant's partial *Motion to Dismiss* [# 25] is ALLOWED.

AN ORDER HAS ISSUED.

### ORDER

For the reasons set forth in the accompanying memorandum, this court hereby orders that:

1. Plaintiffs' *Motion to Strike the Affidavit of Michael Dolan* [# 28] is DENIED.

2. Plaintiffs' *Motion to Strike the Affidavit of Jorge Salamanca* [# 29] is DENIED.

3. Plaintiffs' *Motion for Preliminary Injunction* [# 10] is DENIED.

4. Defendant's partial *Motion to Dismiss* [# 25] is ALLOWED. Counts I through IV and VI are dismissed.

IT IS SO ORDERED.

---

**84.** *Dulgarian v. Stone*, 420 Mass. 843, 652 N.E.2d 603, 609 (1995) (quoting Restatement (Second) of Torts § 623A (1977)).

